COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judge Barrow[*] and
          Senior Judge Hodges
Argued at Salem, Virginia


NEWTON WESLEY FARLEY, JR.

v.   Record No. 0969-93-3                    OPINION BY
                                       CHIEF JUDGE NORMAN K. MOON
COMMONWEALTH OF VIRGINIA                      JUNE 20, 1995


              FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
                       Thomas H. Wood, Judge

          James M. Dungan, Assistant Public Defender
          (William E. Bobbitt, Jr., Public Defender, on
          briefs), for appellant.

          Eugene Murphy, Assistant Attorney General
          (James S. Gilmore, III, Attorney General, on
          brief), for appellee.


     Newton Wesley Farley, Jr., while turkey hunting, shot and

killed another hunter.  Farley was convicted of involuntary

manslaughter and reckless handling of a firearm.  He contends

that the trial court erred in refusing to admit expert

psychological testimony to explain how he could have

misidentified the hunter for a turkey.  A cardinal rule of

hunting is that the hunter identify his target before shooting.

Because the trial court found the psychologist to be an expert

and his scientific testimony to be reliable, and because we find

the proffered testimony to be relevant and without policy reasons

against admitting it, we hold that the trial court erred in

_____
     [*]  Judge Bernard G. Barrow participated in the hearing and
decison of this case and joined in the opinion prior to his
death.

determining the testimony inadmissible as a matter of law rather than determining whether, within its discretion, the evidence should be admitted.

To convict Farley of involuntary manslaughter, the Commonwealth had to prove that the killing was the result of negligence so gross, wanton, and culpable such as to indicate a reckless or indifferent disregard of human life and of the probable consequences of the act.  Cable v. Commonwealth, 243 Va. 236, 240, 415 S.E.2d 218, 220 (1992).  An important aspect of such proof was that Farley did not identify his target before firing.  Indeed, the extent to which Farley tried to identify the target is crucial in determining whether he is criminally negligent.  See id. at 241, 415 S.E.2d at 221.

To prove the reckless handling of a firearm charge, the Commonwealth had to prove that Farley handled the firearm in a reckless manner such as to endanger the life, limb, or property of another person.

Although Farley did not have a burden of proof, he had the right to put on evidence that tended to show that he did not act in a gross, wanton, and culpable manner.  It was crucial to Farley's defense that he prove that he had tried to identify his target before firing.

The admission of evidence is left to the broad discretion of the trial judge.  However, if evidence has probative value, it is normally admissible and should be excluded only when its probative value is outweighed by policy considerations which make

its use undesirable in the particular case.  Blain v. Commonwealth, 7 Va. App. 10, 16-17, 371 S.E.2d 838, 842 (1988); Coe v. Commonwealth, 231 Va. 83, 87, 340 S.E.2d 820, 823 (1986). 1 Charles E. Friend, The Law of Evidence in Virginia, § 11-2 (4th ed. 1993).

Among the policy considerations that weigh against admitting probative evidence are:  (1) its prejudice unfairly outweighs its probative value; (2) its admission is unnecessarily time consuming; and (3) it is confusing and will likely mislead the jury.

Relevant scientific evidence is admissible if the expert is qualified to give testimony and the science upon which he testifies is reliable.  O'Dell v. Commonwealth, 234 Va. 672, 695-96, 364 S.E.2d 491, 504-05, cert. denied, 488 U.S. 871 (1988); see also Myatt v. Commonwealth, 11 Va. App. 163, 166, 397 S.E.2d 275, 277 (1990).  There also must be a connection between the evidence and the factual dispute in the case.  United States v. Downing, 753 F.2d 1224, 1237 (3rd Cir. 1985).  In addition to other reasons for excluding otherwise relevant expert testimony, the trial judge may determine that the subject matter of the evidence is a matter of common knowledge and will not assist the trier of fact in understanding the evidence or in determining a fact in issue.  The court may determine that the evidence will invade the province of the jury.  See id. at 1229.

Farley's version of the shooting was as follows:  He was hunting with his father and brother around 5:30 a.m., May 20,

1992.  The three men split up in the woods.  About thirty minutes later and while using a turkey call, Farley heard a turkey gobble.  Farley began to move in the direction from which the noise came.  Farley then came to an area in the woods where he heard a turkey coming toward him, and he then believed he saw the turkey.  He believed he saw the head of the turkey and the turkey ruffling its feathers as if it were going to fight.

Farley testified that before he shot, he sighted through his scope and looked at the target for approximately one minute.  In his mind, he believed he was shooting at a turkey.  After firing his gun, he discovered that what he had seen was not a turkey but a man who was dressed in camouflage, including a camouflage hood with mask, and who had been using a turkey call while hiding in a bush.

At trial, Farley proffered expert testimony with respect to perception and a phenomenon associated therewith known as "closure."  John L. Kibler, III, Associate Professor of Psychology and Chairman of the Psychology Department at Mary Baldwin College, an experimental psychologist, has taught courses in sensation and perception for eleven years.  The Commonwealth stipulated that he was an expert in his field.

Kibler's proffered testimony is summarized as follows:

Humans have sense receptors that respond to stimuli in the environment.  Perception is the interception, selection, and organization of stimuli by the brain to extract meaning from the surrounding environment; it is the process by which the brain

- 4 -

makes sense out of stimuli to create for one's person an image or impression. The brain is constantly working at interpreting the environment. Through perception, the brain tries to reach a conclusion concerning the environment in order for the person to react to it. However, when the brain receives ambiguous stimuli, it is often difficult or impossible to reach a conclusion about the surrounding environment. "Closure" is the tendency of the brain, when in receipt of ambiguous stimuli, to complete an image for the person based on the ambiguous stimuli even though the image does not actually exist. The brain will come to a conclusion concerning the environment but the conclusion may be wrong. Closure is not a conscious act; the brain performs the function on its own.

Internal factors influence the interpretation of the sense impressions as they come in. The internal factors are previous experiences, expectations, fears, and anticipations. Every individual's perception is subject to differences based upon the stimuli one receives and what one's internal factors are. In other words, two people with the same vision but different internal factors can, if the stimuli are ambiguous, look at the exact same thing, but reach completely different conclusions about what it is they see. When the stimulus world is ambiguous, that is when the environment is difficult to interpret, humans have a tendency to let internal factors lead them to conclusions about their environment. The more ambiguous the stimuli, the more that internal factors influence the conclusion.

The purpose of camouflage is to create ambiguous stimuli; it cuts out clear, stark lines which most animals and humans perceive best.  Thus, camouflage and the presence of trees and shrubs could result in ambiguous stimuli so that an individual's internal factors would tend to affect what one saw.  It is possible, given proper circumstances, for a hunter receiving ambiguous stimuli, with certain expectations, to perceive a turkey when in fact there was none.

Here, the trial court found Dr. Kibler to be an expert in his field.  Although the language of the trial court was not explicit regarding the reliability of the science, the trial judge did say that he thought the expert knew what he was talking about, which we interpret to mean that the trial judge accepted the expert's proffered testimony as reliable.  The Commonwealth did not argue against the expertise of the witness or against the reliability of the science upon which he based his testimony.  The Commonwealth contended that the expert's testimony concerned a matter of such common knowledge that to admit it was unnecessary, and also that to admit it would invade the province of the jury.

The trial court was required to determine whether the testimony would have assisted the jury in understanding the evidence or resolving an issue in the case or whether, instead, the testimony encompassed matters of common knowledge.  While it is true that many jurors may have experienced misperceiving something, the public at large may not be aware that

misperception is sometimes the result of a psychological phenomenon over which to some extent the mind has no control. The expert's testimony may have assisted the jury in understanding how Farley might have misidentified the man, whom he shot, as a turkey or how he might have believed he was shooting at a turkey.

Specifically, the doctor's testimony would have explained to the jury how the camouflage contributed to the possibility of misperception. Some jurors might not appreciate how the victim, being camouflaged and using a turkey call, and Farley, expecting a turkey, could combine to cause Farley reasonably to believe he saw a turkey. The jury might have wondered how Farley could have made such a mistake unless he was grossly, wantonly, and wilfully negligent. The expert testimony could have provided the jury with an explanation that the jury could have found to be a reasonable hypothesis of innocence. Therefore, we believe the testimony would have assisted the jury in resolving an essential issue and should not have been rejected on the grounds that it would not assist the jury or was a matter of common knowledge.

The proffered testimony did not invade the province of the jury. Dr. Kibler did not propose to testify that Farley was not grossly negligent. Rather, he would have testified only that under certain circumstances, given certain ambiguous stimuli, it is possible for a person to misperceive what he is seeing. Relative to Farley, the expert's testimony would have permitted the jury to infer that Farley was not necessarily lying when he

said he saw a turkey rather than another human being.

One of the basic principles of hunting safety proved in the case was "always be sure of your target and what is behind it before you fire." Cable, 243 Va. at 241, 415 S.E.2d at 221. Farley testified that he identified his target as a turkey and watched it for a minute before he fired. The expert testimony would have given credence to Farley's testimony that he had identified his target. That evidence would have tended to refute the Commonwealth's theory that Farley recklessly shot at a target that he had not first identified.

Even with the expert testimony, the jury could have disbelieved Farley's explanation. Farley's credibility and the extent to which he was negligent were matters for the jury to decide. Ford v. Ford, 200 Va. 674, 679, 107 S.E.2d 397, 401 (1959). Therefore, the evidence should not have been rejected on the ground that it invaded the province of the jury.

Accordingly, because the evidence was relevant as being probative of whether Farley acted in a callous, gross, and wanton disregard for the life of another, because the science upon which the expert based his testimony was apparently accepted as reliable, because the evidence did not invade the province of the jury, and because there were no policy reasons for rejecting the testimony, we hold that the trial court erred in deciding that the evidence was inadmissible as a matter of law. Because the trial judge erroneously determined that the evidence was inadmissible, he did not exercise his discretion in deciding

- 8 -

whether to admit it.  Accordingly, the case is remanded to the trial court for retrial and the trial court should exercise its discretion in whether to admit the testimony.

Farley also proffered testimony of an expert turkey hunter who, the Commonwealth stipulated, would have corroborated the first expert's testimony on the issue of closure.  This testimony was also disallowed.  Upon remand, the admissibility of that testimony if offered by defendant should be considered in accordance with the views expressed regarding Dr. Kibler's testimony.

<u>Reversed and remanded.</u>

BARROW, J., concurring in part and dissenting in part.


Judge Barrow, who participated in the oral argument and the decision of this appeal before his death, joined in the decision to reverse the convictions. However, he would have held that upon the facts and circumstances of the case Kibler's testimony was admissible as a matter of law. Accordingly, we record Judge Barrow as concurring in part and dissenting in part.