COURT OF APPEALS OF VIRGINIA

Present:  Judges Willis, Fitzpatrick and
          Senior Judge Hodges
Argued at Alexandria, Virginia

STEPHON P. FAUNTLEROY

v.      Record No. 1085-94-4            MEMORANDUM OPINION*
                                     BY JUDGE WILLIAM H. HODGES
COMMONWEALTH OF VIRGINIA                 OCTOBER 31, 1995

           FROM THE CIRCUIT COURT OF STAFFORD COUNTY
                  James W. Haley, Jr., Judge

           R. Scott Pugh for appellant.

           H. Elizabeth Shaffer, Assistant Attorney General
           (James S. Gilmore, III, Attorney General, on
           brief), for appellee.


     Appellant was convicted of first degree murder and sentenced

to life imprisonment.  On appeal, he alleges the trial court

erred in admitting into evidence a handwritten message and the

testimony of a handwriting expert, in restricting his cross-

examination of a witness, and in instructing the jury.  Finding

no error, we affirm appellant's conviction.

                              I.

     "On appeal, we review the evidence in the light most

favorable to the Commonwealth, granting to it all reasonable

inferences fairly deducible therefrom."  Martin v. Commonwealth,

4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

     On the morning of August 1, 1993, appellant told an

acquaintance he knew his wife Gloria Fauntleroy had "been

fucking," called her a "bitch," and said if he could not "have

her, nobody else will."  Between 12:00 and 1:00 p.m., Daymon

_____
     *Pursuant to Code § 17-116.010, this opinion is not
designated for publication.

Coleman saw Gloria crying as she walked on the path through the woods from her townhouse to Forbes Market. Coleman later saw appellant on the path, and asked him why Gloria had been crying. Appellant said, "[W]hen I catch up with the fucking bitch, she's going to do more than cry."

That afternoon, witnesses saw Gloria talking on a telephone outside Forbes Market. Appellant was arguing with her and trying to hang up the phone. Gloria dropped the phone and walked quickly up the path into the woods. Appellant followed her. Gloria was not seen alive again.

On August 4, Gloria's body was found in the woods between her home and Forbes Market. Gloria had died from strangulation with a ligature.

Two days after Gloria disappeared, appellant told Jeffrey Armstead he had hit Gloria with a knife. Armstead jokingly asked appellant, "[Y]ou sure you didn't kill your wife and bury her in your back yard?" Appellant said, "I didn't mean to hurt her. I mean, I didn't hurt her. Don't put that on me . . . ." Appellant reported his wife missing that evening. On August 5, before police officers advised him that they had found Gloria's body, appellant told the police that he did not kill his wife.

## II.

On a metal panel of a soda machine outside Forbes Street Market, the police found the written message, "Bitch you will die! Like the bloody whore you are." The soda machine was near the telephone witnesses saw Gloria using while arguing with appellant on August 1. The message had not been present on July

2

31, when the store manager cleaned the outside of the machine. He noticed the writing for the first time on August 3.

Thomas Goyne, an expert in the field of handwriting analysis, testified that by comparing the message written on the metal panel with known exemplars of appellant's writing, there were "indications" appellant had written the first sentence of the message. There were "limited indications" appellant wrote the portion of the note ending with "you are." On appeal, appellant argues that the message and the testimony concerning it were inadmissible.

"The admission of evidence is left to the broad discretion of the trial judge. However, if evidence has probative value, it is normally admissible and should be excluded only when its probative value is outweighed by policy considerations which make its use undesirable in the particular case." Farley v. Commonwealth, 20 Va. App. 495, 498, 458 S.E.2d 310, 311 (1995).

"The standard of review on appeal where the admissibility of expert testimony is challenged is whether the trial court abused its discretion." Kern v. Commonwealth, 2 Va. App. 84, 86, 341 S.E.2d 397, 398 (1986). "Relevant scientific evidence is admissible if the expert is qualified to give testimony and the science upon which he testifies is reliable. There also must be a connection between the evidence and the factual dispute in the case." Farley, 20 Va. App. at 498-99, 458 S.E.2d at 312. "Expert testimony is appropriate to assist triers of fact in those areas where a person of normal intelligence and experience cannot make a competent decision." Swiney v. Overby, 237 Va.

231, 233, 377 S.E.2d 372, 374 (1989).

Appellant challenged neither Goyne's qualifications as an expert nor the reliability of the science in his area of expertise. Appellant's sole objection was that Goyne was not able to conclude to a reasonable degree of certainty that the writing on the panel was appellant's. The trial judge found that appellant's objection went to the weight, not the admissibility, of the evidence.

"[A]n expert opinion 'based on a "possibility" is irrelevant, purely speculative and, hence, inadmissible.'" Hubbard v. Commonwealth, 243 Va. 1, 13, 413 S.E.2d 875, 881 (1992) (quoting Spruill v. Commonwealth, 221 Va. 475, 479, 271 S.E.2d 419, 421 (1980)). Goyne's testimony about the writing on the panel, however, was not based upon a "possibility." Rather, it was founded upon Goyne's scientific study of the writing on the metal panel and the known exemplars of appellant's writing, a comparison Goyne was qualified to perform. Goyne's opinion was not inadmissible merely because he could not specifically conclude that appellant wrote the message on the panel. The expert carefully described the range of conclusions which could be reached as a result of his scientific examination. His range of conclusions began with the ability to identify the writer to the exclusion of all others to categorically eliminating a writer. From absolute identification the steps drop to strong indications, indications, limited indications, cannot be eliminated and then the reverse. Goyne's qualifications of his findings affected only the weight to be given the evidence, not

4

the admissibility, as the trial judge properly ruled.  See Hetmeyer v. Commonwealth, 19 Va. App. 103, 110, 448 S.E.2d 894, 899 (1994).  See also Seneca Falls Greenhouse & Nursery v. Layton, 9 Va. App. 482, 487, 389 S.E.2d 184, 187 (1990) (the manner in which a jury may weigh the opinion of an expert "has nothing to do with its admissibility").  Thus, the trial judge did not abuse his discretion in admitting Goyne's testimony.

III.

While incarcerated awaiting trial, appellant told Keith Willis, another inmate, "Yeah, I did it.  They'll never get any evidence to convict me.  They're dumb as hell."

On voir dire, Willis revealed his prior criminal charges and the disposition of those charges.  While serving time in the Chesterfield County jail for a conviction of grand larceny, Willis gave the police information about an individual in Florida to retaliate against that person, but the police did not act upon the information.  Also while in the Chesterfield jail, Willis was arrested for grand larceny and making a false report to the police in Spotsylvania County.  Willis pled guilty to petit larceny, and the false report charge was dropped.

In Stafford County, Willis pled guilty to grand larceny, receiving a three-year reduction in his suspended sentence in exchange for his truthful testimony against appellant.  While incarcerated in the Stafford County jail, Willis told the FBI that Michael Green, another inmate, had discussed planting a car bomb.  Green subsequently was charged with attempting to kill a prosecutor, but Willis was offered nothing by the federal

5

authorities for the information he provided.

Before appellant's trial, Willis had never testified in court against anyone. At the time of trial, Willis was incarcerated, but had no charges against him pending disposition.

Appellant argued at trial that he should be able to ask Willis about the "deals" he had made with the prosecution concerning his other past convictions. Appellant conceded he had no evidence Willis had made any such deal or ever had "any slack cut" in a prior case. In fact, Willis stated that none of the dismissals of any of the charges against him resulted from any agreement he had made with the prosecuting authorities. The trial judge refused to allow appellant to ask Willis the proposed question, but permitted appellant to ask Willis about the number and nature of prior convictions and the terms of his plea agreement in Stafford County, including his agreement to testify against appellant. The court also did not permit appellant to ask Willis about the two instances where he had offered information to the police.

> Cross-examination is fundamental to the truth-finding process and is an absolute right guaranteed to the defendant by the confrontation clause of the Sixth Amendment. While the trial court has the discretion to see that the right of cross-examination is not abused, this discretion is to be employed only after the right "has been substantially and fairly exercised." In exercising the right, the defendant can elicit "any evidence . . . which tends to affect the credibility of [witnesses] or the weight of their testimony by showing what influences, if any, were brought to bear upon them."

Shanklin v. Commonwealth, 222 Va. 862, 864, 284 S.E.2d 611, 612 (1981) (citations omitted).

6

The trial judge permitted appellant great latitude in his cross-examination of Willis. In fact, the terms of Willis' Stafford County plea agreement, including the condition that he testify against appellant, were revealed to the jury. See Bradshaw v. Commonwealth, 16 Va. App. 374, 378-79, 429 S.E.2d 881, 884 (1993). Appellant produced no evidence to demonstrate that Willis, by offering information to law enforcement authorities on two occasions and receiving nothing in return, was motivated by self-interest to testify untruthfully at appellant's trial. In this regard, Willis was in a position no different than an ordinary citizen who reported suspected criminal activity to the police. The trial judge did not prevent appellant from presenting matters to the jury tending to demonstrate that Willis was biased, and did not abuse his discretion in limiting the cross-examination of Willis.

Appellant further contends the court should have allowed him to question Willis about the false report charge, of which appellant was never convicted. Where it is not relevant to demonstrate a witness' bias or motive to fabricate, "[e]vidence of specific acts of misconduct is generally not admissible in Virginia to impeach a witness' credibility." Banks v. Commonwealth, 16 Va. App. 959, 963, 434 S.E.2d 681, 683 (1993).

Furthermore, that a witness has merely been charged with a crime is inadmissible for purposes of impeachment. Dowell v. Commonwealth, 12 Va. App. 1145, 1147, 408 S.E.2d 263, 264-65 (1991), aff'd on reh'g en banc, 14 Va. App. 58, 414 S.E.2d 440 (1992). For these reasons, the trial judge did not err in

7

refusing to permit cross-examination of Willis on the matter.

                                    IV.

The following language was appended to instruction 3, concerning circumstantial evidence: "[T]he theories of innocence which must be excluded are only those which flow from the evidence itself.  The Commonwealth has no duty to negate the theories which flow only from the imagination of the defendant's counsel."  Conceding that the instruction correctly stated the law, see Saunders v. Commonwealth, 18 Va. App. 825, 830, 447 S.E.2d 526, 529 (1994), appellant argues that the appended language was inappropriate upon the facts of the case.

"A reviewing court's responsibility in reviewing jury instructions is to 'see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'"  Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)).  The instruction in question provided the jury with the proper framework to weigh the evidence, which was largely circumstantial.  Considering that appellant's theory of defense was to show that someone else murdered his wife, the instruction was applicable to the facts and circumstances of the case.

Furthermore, "[a] proposed jury instruction submitted by a party, which constitutes an accurate statement of the law applicable to the case, shall not be withheld from the jury solely for its nonconformance with model jury instructions."  Code § 19.2-263.2.  Thus, we cannot say that the trial judge

                                     8

erred in granting the circumstantial evidence instruction.[1]

For these reasons, we affirm appellant's conviction.

<u>Affirmed</u>.

---

[1]Appellant further contends that the prosecutor was permitted during closing argument to "launch an attack on the credibility of [his] . . . counsel." However, "errors assigned because of a prosecutor's improper comments or conduct during closing argument will not be considered on appeal unless the accused timely moves for a cautionary instruction or for a mistrial." <u>Morris v. Commonwealth</u>, 14 Va. App. 283, 286-87, 416 S.E.2d 462, 464 (1992) (<u>en</u> <u>banc</u>). Appellant did neither in this case, and our consideration of this argument is barred.