COURT OF APPEALS OF VIRGINIA


Present:  Judges Humphreys, Clements and Agee
Argued at Richmond, Virginia


DAVID WESLEY SPENCER

MEMORANDUM OPINION[*] BY
v.    Record No. 2207-01-2      JUDGE G. STEVEN AGEE
OCTOBER 8, 2002

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Michael C. Allen, Judge

Steven D. Benjamin (Betty Layne DesPortes;
Benjamin & DesPortes, P.C., on briefs), for
appellant.

Stephen R. McCullough, Assistant Attorney
General (Jerry W. Kilgore, Attorney General,
on brief), for appellee.


David Wesley Spencer (Spencer) was convicted by a jury in

the Chesterfield County Circuit Court of aggravated sexual

battery, in violation of Code § 18.2-67.3, and object sexual

penetration, in violation of Code § 18.2-67.2.  On appeal,

Spencer raises eight issues which can be consolidated into four

areas:  (1) Whether Spencer was erroneously denied access to the

CPS file; (2) whether the Commonwealth failed to provide Spencer

with exculpatory evidence prior to his trial; (3) whether the

trial court erred in limiting the testimony of Dr. Coleman; and

(4) whether the trial court erred in failing to strike four

---

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

jurors for cause.  Upon review of these issues, we affirm the decisions of the trial court and affirm Spencer's convictions.[1]

## I.  ACCESS TO THE CPS FILE

Spencer contends the trial court and this Court have erred by refusing him access to the sealed CPS file.  We find no error in the trial court's decisions or ours.

First, Spencer contends the denial of pretrial access to the CPS file, which contained an audiotape and transcript of the CPS interview with the victim, prevented him from effectively preparing for his trial and, thus, he had a right to review the material in the file.  We disagree.

> "[T]here is no general constitutional right to discovery in a criminal case." Spencer v. Commonwealth, 238 Va. 295, 303, 384 S.E.2d 785, 791 (1989), cert. denied, 493 U.S. 1093 (1990) (citations omitted).  Rule 3A:11 provides for limited pretrial discovery by a defendant in a felony case.  Hackman v. Commonwealth, 220 Va. 710, 713-14, 261 S.E.2d 555, 558 (1980).

Ramirez v. Commonwealth, 20 Va. App. 292, 294-95, 456 S.E.2d 531, 532 (1995).  Rule 3A:11 does not provide for the discovery of material compiled by an agency involved in the investigation of a criminal allegation and "statements made to [the agency's] employees and their reports, memoranda, and internal documents

---

[1] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, only those facts necessary to a disposition of this appeal are recited.

[are] not discoverable."  Id. at 296, 456 S.E.2d at 533 (citing Rule 3A:11(b)(2)).

As we held in Ramirez, CPS is an agent of the Commonwealth when it investigates abuse complaints.  Pursuant to Code § 63.1-248.6(E)(5), CPS was required to investigate the victim's complaint, and upon suspicion of sexual abuse, it was required to report to the Commonwealth's Attorney for Chesterfield County and provide information to him.  Under the circumstances of this case, CPS was involved in the investigation of the sexual abuse allegation and was, therefore, an agent of the Commonwealth for purposes of Rule 3A:11(b)(2).  See id.  Therefore, pursuant to Rule 3A:11(b)(2), the statements made to CPS and its reports, interview documentation and internal documents were not discoverable.  Accordingly, the trial court did not err in refusing to permit Spencer access to the CPS file.

Next, Spencer argues the trial court erred in denying his motion to expand the protective order to permit his counsel to disclose the contents of the CPS file to others associated with the preparation of his defense.  He contends the trial court's refusal prevented him from proffering evidence necessary to demonstrate the Commonwealth's alleged failure to provide him with all exculpatory evidence.  We find the trial court did not err.

The trial court vacated the initial protective order and required counsel to surrender all copies of materials he obtained under the terms of the protective order.  The trial court found that it had "improvidently entered" the initial protective order allowing post-trial access to the CPS file because the pretrial

ruling was that the file would be kept under seal and the court would review its contents in camera for exculpatory evidence.  In other words, the trial court erroneously entered the initial protective order which permitted defense counsel access to the CPS file to which he was never entitled.  Because the trial court indicated it "improvidently entered" the original protective order it did not err in denying Spencer's motion to expand the protective order, which it vacated.

Lastly, Spencer argues this Court erred in refusing to permit his appellate counsel access to the sealed materials in the record.  He contends our denial of his motion to permit the requested access has prevented him from effectively presenting the issues to this Court.  We disagree.  We informed Spencer that we would review the sealed materials in camera to determine whether the trial court erred in assessing whether the CPS file contained exculpatory evidence as he contends.  As the following analysis reflects, we have reviewed the material and find no need to reconsider Spencer's appellate motion requesting access.

## II.  FAILURE TO PROVIDE EXCULPATORY EVIDENCE

Spencer next contends the Commonwealth violated his "rights to cross-examination, compulsory process, effective assistance of counsel, and due process by failing to disclose exculpatory evidence."  He further contends the trial court erred in refusing to grant him a new trial because the foregoing rights were violated.  While our review of the record reveals some arguably exculpatory evidence was not provided to Spencer, we find the trial court did not err in refusing to grant Spencer a new trial.

### A.  Due Process

Due process requires that the Commonwealth disclose all material exculpatory evidence to an accused. Jefferson v. Commonwealth, 27 Va. App. 477, 486, 500 S.E.2d 219, 224 (1998) (citing Brady v. Maryland, 373 U.S. 83, 87 (1963)). Exculpatory evidence is evidence that is favorable to the accused and includes impeachment evidence. United States v. Bagley, 473 U.S. 667, 676 (1985); Robinson v. Commonwealth, 231 Va. 142, 150, 341 S.E.2d 159, 164 (1986). The withholding of information from a defendant constitutes a due process violation, "irrespective of the good faith or bad faith of the prosecution," Brady, 373 U.S. at 87, when the information is "(1) either directly exculpatory or [has] impeachment value, (2) suppressed by the government, and (3) material." Lockhart v. Commonwealth, 34 Va. App. 329, 345, 542 S.E.2d 1, 8 (2001) (citing Strickler v. Greene, 527 U.S. 263, 280-81 (1999)).

Our review of the record reveals the Commonwealth failed to disclose to Spencer that the victim, in his interview with CPS, (1) informed CPS that he saw Spencer's genitalia one time and that was when the victim saw Spencer in the shower; (2) initially answered in the negative when asked whether Spencer touched him "anywhere besides your pee pee"; and (3) initially answered in the negative when asked, in general, whether Spencer had ever touched his backside.[2] Assuming, but not deciding, the foregoing

---

[2] These statements are contained in the interview transcript on pages 16 and 21. We found no exculpatory evidence on the "missing pages" of the transcript (pages 8-13). In his post-trial motion for a new trial, Spencer contended he should have been informed by the Commonwealth of allegedly leading questions used by CPS when it interviewed the victim as evidenced in the interview transcript. We disagree. Spencer

to be exculpatory evidence that should have been disclosed, we do not find it to be material.

"'[I]mplicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial.'" Bagley, 473 U.S. 667, 674-75 (1985) (quoting United States v. Agurs, 427 U.S. 97, 104 (1976)).

> [E]vidence is material only if there is a
> reasonable probability that, had the evidence
> been disclosed to the defense, the result of
> the proceeding would have been different.  A
> "reasonable probability" is a probability
> sufficient to undermine confidence in the
> outcome.

Id. at 682.

> The reviewing court should assess the
> possibility that such effect might have
> occurred in light of the totality of the
> circumstances and with an awareness of the
> difficulty of reconstructing in a post-trial
> proceeding the course that the defense and
> the trial would have taken had the defense

---

could have gotten this information elsewhere by interviewing or examining the CPS agent, Ms. Evans or Detective Pritchard.  See Epperly v. Booker, 997 F.2d 1 (4th Cir. 1993).  For reasons known only to Spencer, he failed to pursue these options. Spencer also contends he should have been informed of the victim's inability to recall events.  However, our review of the record reveals no such inability related to the charges against Spencer.  While the victim was unable to recall exact dates, he could describe the time of year and his age; and while he could not recall exactly what Spencer did immediately upon touching him, he could describe where on his anatomy Spencer initiated contact and how it felt emotionally and physically.  These statements, and the inability of the victim, a child, to remember minute details, are not exculpatory and, therefore, the Commonwealth was not required to reveal them to Spencer. Finally, Spencer contends he should have been informed of the unduly suggestive questions posed to the victim.  Assuming, but not deciding, that such information is discoverable, we find this complaint to be unmeritorious as the audiotape does not reflect any undue influence or impermissible leading questions.

> not been misled by the prosecutor's
> incomplete response.

Id. at 683.  However, "[t]he mere possibility that an item of undisclosed information might have helped the defense . . . does not establish 'materiality' in the constitutional sense."  Agurs, 427 U.S. at 109-10.

Our review of the entire record does not convince us that if the additional evidence had been revealed there is a reasonable probability the jury's verdict would have been different.  The fact that the victim stated he saw Spencer's genitalia once when he saw him in the shower does not exclude other possible instances.  In addition, the victim testified that anal penetration occurred while he was lying down with Spencer behind him.

The fact that the victim initially denied Spencer ever touched him "anywhere besides [his] pee pee" is not material because the victim admitted at trial that he had previously denied that anal penetration occurred.  The jury was, therefore, aware that the victim had been inconsistent in his past recollections of the events.  The jury also heard from two other witnesses who presented evidence that Spencer sexually assaulted the victim.  The victim's sister testified that she had witnessed, more than once, Spencer touch the victim "underneath his pants."  Dr. Foster testified that she personally examined the victim and performed a colonoscopy and its findings were "consistent with rectal trauma or penetration of the rectum."

Because the possible exculpatory evidence was not material, there was no due process violation that warranted a new trial

and, therefore, the trial court did not err in denying Spencer's request for a new trial.

### B. Other Alleged Rights Violations

Spencer also alleges that the trial court's denial of his request to view the CPS file and the Commonwealth's failure to disclose all of the victim's statements which were possibly exculpatory to the defense, violated his rights under the Sixth Amendment's Confrontation Clause and the guarantee of compulsory process.[3]  For the following reasons, we disagree.

### 1. The Right to Confront Witnesses

Spencer argues, implicitly, that the failure to disclose information contained in the CPS file that might have made cross-examination more effective undermines the Confrontation Clause's purpose of increasing the accuracy of the truth-finding process at trial.  This argument, however, fails to recognize the fact that the Confrontation Clause is not a constitutionally compelled rule for pretrial discovery.  The right to question adverse witnesses, which the right to confrontation guarantees, see Barber v. Page, 390 U.S. 719, 725 (1968), "'does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony.'"  Goins v. Commonwealth, 251 Va. 442, 456, 470 S.E.2d 114, 124 (1996) (quoting Pennsylvania v. Ritchie, 480 U.S. 39, 53 (1987) (plurality)).  The rights guaranteed by the Confrontation

---

[3] Spencer also argues that the circumstances of this case impeded his right to the effective assistance of counsel.  This claim, however, is not reviewable on direct appeal.  Goins v. Commonwealth, 251 Va. 442, 455 n.2, 470 S.E.2d 114, 124 n.2 (1996).

Clause are "'satisfied if defense counsel receives wide latitude at trial to question witnesses.'" Id.

Spencer does not allege, nor does the record reflect, that the trial court limited defense counsel's cross-examination of the Commonwealth's witnesses. Thus, Spencer's right to confront the witnesses against him was not denied by the trial court's discovery ruling or the Commonwealth's failure to provide him with the possible exculpatory evidence that we have concluded was not material. See id.

### 2. The Right to Compel Witnesses

Spencer also alleges that his rights under the Sixth Amendment's compulsory process clause have been violated under the circumstances of this case. Again, we disagree.

The compulsory process clause provides a defendant with government assistance in compelling the presence of favorable witnesses at trial. Ritchie, 480 U.S. at 56. This right has never been interpreted to include the right to discover the identity of witnesses or to require the Commonwealth to produce witnesses who might give exculpatory testimony. Further, we have already held that no due process violation occurred in this case, and the right of compulsory process "provides no greater protections in this area than those afforded by due process." Id.

The denial of Spencer's request to view the CPS file and the Commonwealth's failure to inform Spencer of the immaterial exculpatory evidence in the file were unrelated to Spencer's right to obtain government assistance in compelling the attendance of witnesses. See id.; Goins, 251 Va. at 456-57, 470

S.E.2d at 124.  The record reflects no impediment to Spencer calling any witness of his choosing.  Thus, Spencer's right of compulsory process was not violated.


### III.  LIMITATIONS UPON DR. COLEMAN'S TESTIMONY

Spencer also contends the trial court erred in limiting the expert witness testimony of Dr. Coleman.  We disagree.

> "Expert testimony is appropriate to assist triers of fact in those areas where a person of normal intelligence and experience cannot make a competent decision."  Swiney v. Overby, 237 Va. 231, 233, 377 S.E.2d 372, 374 (1989).  The expert testimony must be relevant, and the trial judge must determine whether the subject matter of the testimony is beyond a lay person's common knowledge and whether it will assist the trier of fact in understanding the evidence or in determining a fact in issue.  See Farley v. Commonwealth, 20 Va. App. 495, 498-99, 458 S.E.2d 310, 312 (1995).  "The admission of expert testimony is committed to the sound discretion of the trial judge, and we will reverse a trial court's decision only where that court has abused its discretion."  Brown v. Corbin, 244 Va. 528, 531, 423 S.E.2d 176, 178 (1992).

Utz v. Commonwealth, 28 Va. App. 411, 423-24, 505 S.E.2d 380, 386 (1998).

The trial court found Spencer's proffered reason for Dr. Coleman's testimony, to explain the "suggestibility" of children, to be unnecessary in this case.  We do not find this was an abuse of discretion.  Dr. Coleman had not met the victim, Detective Pritchard or Jolene Evans.  He had no knowledge of the interview techniques used in the interview with the victim and made no inquiry in that regard.  Accordingly, the trial court did

not abuse its discretion in limiting Dr. Coleman's testimony to the medical records that he had reviewed.[4]

## IV.  THE JURORS

Lastly, Spencer contends the trial court erred in denying his motions to strike jurors Andrews, Clark, Trevey and Allmon for cause.  We disagree.

An accused is constitutionally guaranteed the right to a trial by "an impartial jury."  U.S. Const. amends. VI, XIV; Va. Const. art. I, § 8; <u>see</u> Code § 8.01-358; Rule 3A:14.  "Trial courts, as the guardians of this fundamental right, have the duty to procure an impartial jury."  <u>Griffin v. Commonwealth</u>, 19 Va. App. 619, 621, 454 S.E.2d 363, 364 (1995).  Accordingly, "the trial judge must probe the conscience and mental attitude of the prospective jurors to ensure impartiality."  <u>Id.</u>  A juror holding "a preconceived view that is inconsistent with an ability to give an accused a fair and impartial trial, or who persists in a misapprehension of law that will render him incapable of abiding the court's instructions and applying the law, must be excluded for cause."  <u>Sizemore v. Commonwealth</u>, 11 Va. App. 208, 211, 397 S.E.2d 408, 410 (1990).

"[I]n determining whether a prospective juror should have been excluded for cause, we review the entire <u>voir</u> <u>dire</u>, rather than a single question and answer."  <u>Barnabei v. Commonwealth</u>, 252 Va. 161, 173, 477 S.E.2d 270, 277 (1996).  Whether a juror is

---

[4] Spencer recites a claim that the CPS worker "interjected suggestions of dreams" to support his argument on the need of expert testimony regarding the suggestibility of children. However, the single transcript reference to "in this dream" appears to be a transcriptional error as the audiotape reflects the phrase to be "in this room."

impartial is a question of historical fact.  See Wainwright v. Witt, 469 U.S. 412, 428 (1985).  On appeal, a trial court's decision to seat a juror is entitled to great deference, and the decision will not be overturned unless the error is manifest. See McGill v. Commonwealth, 10 Va. App. 237, 241, 391 S.E.2d 597, 600 (1990).

A review of the entire voir dire fails to show that the trial court abused its discretion by refusing to strike the four jurors for cause.

### A.   Andrews

While Spencer contends the trial court abused its discretion in not striking Andrews for cause after the juror revealed that she had learned of the case through media reports, the fact that she had heard of the case was not sufficient reason to require her to be stricken for cause.

"Even though a prospective juror may hold preconceived views, opinions, or misconceptions, the test of impartiality is whether the venireperson can lay aside the preconceived views and render a verdict based solely on the law and evidence presented at trial."  Griffin, 19 Va. App. at 621, 454 S.E.2d at 364.  The rationale behind this rule of law has been stated by the Supreme Court of the United States:

> In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case.  This is particularly true in criminal cases.  To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is

> sufficient to rebut the presumption of a
> prospective juror's impartiality would be to
> establish an impossible standard.  It is
> sufficient if the juror can lay aside his
> impression or opinion and render a verdict
> based on the evidence presented in court.

Irvin v. Dowd, 366 U.S. 717, 722-23 (1961).  Therefore, "[t]he constitutional guarantee of an impartial jury does not contemplate excluding those who have read or heard news accounts concerning the case or even exclusion of those who may have formed an opinion based on such accounts."  Wilmoth v. Commonwealth, 10 Va. App. 169, 173, 390 S.E.2d 514, 516 (1990).

The prospective juror, Andrews, acknowledged awareness of accounts of the crime in the media but her awareness was coextensive with the brief summary of allegations provided by the trial court at the commencement of voir dire.  This juror informed the court that the information would not cause her to prejudge the case and would not prevent her from giving fair and impartial consideration to the evidence presented by both parties.  She also indicated it would not cause her difficulty in applying the presumption of innocence and would not affect her ability to sit impartially in the case.

Upon review of the voir dire as a whole, we find that the trial judge did not err by refusing to strike Andrews for cause.

### B.  Clark and Trevey

We also find no merit to Spencer's contention that jurors Clark and Trevey should have been stricken for cause because they both had an emotional reaction to the charges which they initially indicated made them unsure whether they could be impartial.  Our review of the entire voir dire, not just isolated

statements, reveals the trial court did not abuse its discretion in refusing to strike these two jurors for cause.

Our review found no evidence creating a reasonable doubt as to these two jurors' qualifications to serve fairly and impartially. Neither juror indicated to the trial court that he or she held a preconceived view that was inconsistent with an ability to give Spencer a fair and impartial trial, or that he or she was incapable of following the court's instructions.

While Clark indicated that she had experienced "a visceral reaction" upon learning of the charges against Spencer, which she felt might cause her difficulty, she indicated that she believed Spencer was innocent until proven guilty. She stated she would listen to each witness impartially and weigh the evidence without presuming that the victim was telling the truth. She also indicated that she could follow the law and she understood that the Commonwealth had to prove its case beyond a reasonable doubt.

Although Trevey stated that he felt a "sense of rage" when he heard the charges against Spencer and that he was "not sure" he could be impartial, he also stated that he understood Spencer was innocent until proven guilty and that the Commonwealth had to prove guilt beyond a reasonable doubt. He further indicated he could follow the trial court's instructions, weigh all of the evidence and follow the law. Accordingly, the trial court did not err by refusing to strike Clark and Trevey for cause.

## C. Allmon

As a last contention related to jury selection, Spencer argues that the trial court erred in not striking Allmon for cause due to her bias in favor of police officers. We disagree.

Although Allmon stated she would be inclined to attach credibility to the testimony of a police officer, she stated she would not "automatically" believe the testimony of a police officer. She stated she could render a fair and impartial decision in the case. She also stated she believes a person is innocent until proven guilty and she would listen to all of the facts in the case before making a decision.

Viewing the voir dire of this prospective juror as a whole, it is clear that she was committed to hearing the evidence and observing the witnesses before making determinations of credibility. The juror dispelled any notion that the status of being a police officer would per se render an officer's testimony more believable than contrary testimony by one who was not a police officer. On this record, the trial court did not abuse its discretion by refusing to strike Allmon.

## V. CONCLUSION

Finding no error that requires the reversal of Spencer's convictions, we affirm the decisions of the trial court.

Affirmed.