COURT OF APPEALS OF VIRGINIA

Present: Judges Willis, Elder and Annunziata
Argued at Richmond, Virginia


DANIEL LAWSON ANDERSON
                                          OPINION BY
v.   Record No. 0691-98-2      JUDGE ROSEMARIE ANNUNZIATA
                                          MAY 11, 1999
CHERYL KERNER ANDERSON


          FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                  Herbert C. Gill, Jr., Judge

          Lawrence D. Diehl (Susanne L. Shilling;
          Shilling & Associates, on brief), for
          appellant.

          Julie M. Cillo (Phoebe P. Hall, on brief),
          for appellee.


     In this appeal, Daniel Lawson Anderson ("husband") argues

the trial court erred by:  1) excluding the testimony of Dr.

Arnold Stolberg under the confidentiality provisions of Code

§ 8.01-581.22; 2) failing to grant him joint legal custody of

the parties' child, Elyse; 3) denying his request for additional

holiday visitation; 4) classifying two IRA funds as marital

property; 5) failing to order or address the issue of the

division of tangible personal property in its equitable

distribution award; and 6) failing to award him an equitable

distribution exceeding one-half of the marital property.  Wife

alleges cross-error, contending the trial court erred in finding

that husband did not waste marital funds in an IRA account with

Crestar Bank.  Both parties ask for an award of attorneys' fees incurred on appeal; husband also asks for costs.  For the reasons stated below, we reverse in part and affirm in part.

I.

BACKGROUND

We review the evidence in the light most favorable to wife, the party prevailing below and grant all reasonable inferences fairly deducible therefrom.  See Gamer v. Gamer, 16 Va. App. 335, 340, 429 S.E.2d 618, 622 (1993).

The parties married on October 20, 1984 and had one child, Elyse, born November 7, 1989.  The parties separated on January 31, 1996.  Wife filed a bill of complaint for divorce on February 9, 1996, charging cruelty and constructive desertion.  Husband's cross-bill alleged desertion.

The trial court entered preliminary orders regarding custody, child support, and the preservation of the parties' assets on February 23, May 16, and November 7, 1996, and February 13, 1997, respectively.

On May 28, 1997, the trial court issued a letter opinion granting wife a no-fault divorce.  It also awarded her sole legal custody of Elyse with visitation to husband based on an existing schedule; ruled that husband's American Funds and Crestar IRA accounts were marital property; found that husband did not meet his burden of tracing as to the funds in these accounts; found that husband used marital funds in the Crestar

-

account for legitimate post-separation expenses; and awarded an equal division of marital property. Upon motions to reconsider its initial ruling, the court issued a second letter opinion on October 13, 1997, again holding that the American Funds and Crestar IRA accounts were marital property and that husband had failed to satisfy his burden of proof on the retracing issue. The court entered a final decree of divorce, incorporating its previous findings, on February 26, 1998.

## II.

### EXCLUSION OF DR. STOLBERG'S TESTIMONY

Husband argues the trial court erred by excluding the testimony of Dr. Arnold Stolberg pursuant to the confidentiality provisions of Code § 8.01-581.22, having concluded that he acted as a mediator in the custody dispute between the parties.[1] We agree and reverse on that ground.

Shortly after their separation in January 1996, the parties agreed to meet with Dr. Stolberg, a licensed clinical psychologist. Dr. Stolberg subsequently prepared a report, recommending the court award joint legal and physical custody of Elyse to the parties based on information gathered over the course of the parties' sessions. Although husband sent this

---

[1] Code § 8.01-581.22 states that "[a]ll memoranda, work products and other materials contained in the case files of a mediator or mediation program are confidential." Code § 8.01-581.21 defines "mediator" as "an impartial third party selected by agreement of the parties to a controversy to assist them in mediation."

-

report to the court, the report was not admitted into evidence. When husband proposed to have Dr. Stolberg testify with respect to his findings, wife objected, contending Dr. Stolberg acted as a mediator between the parties and was thus precluded from testifying under the confidentiality provisions of Code § 8.01-581.22.

Wife filed a brief setting forth her position on the issue.[2] In her brief, wife proffered that Dr. Stolberg suggested the parties use him to "mediate their parenting arrangements, advising them that he had worked out his own personal custody arrangements in mediation and that it was a good way to resolve things." Wife also stated that Dr. Stolberg "worked with [the parties] to help them work out an agreement as to how they would parent their child as separated parents, and [wife] relied on him as a neutral mediator during this process." The only other evidence wife offered to show that Dr. Stolberg acted as a mediator were documents describing him as such, including: 1) a letter from husband suggesting they make "use of Dr. Stolberg to mediate non-monetary issues between [them]"; 2) a billing statement provided by husband that describes Dr. Stolberg's services as "Child Counseling/Psychological Evaluation/Divorce

---

[2]The parties' evidence on this matter originates exclusively from written documentation submitted to the court in support of their respective positions; the court heard no oral testimony on the issue. The court entered an order disposing of this issue based on the "written argument" of counsel.

Mediation"; and 3) a proposed order prepared by husband's counsel that describes the parties' meetings with Dr. Stolberg as "mediation."[3]  Eventually, wife discontinued the sessions because she felt Dr. Stolberg was "pressing her to agree to matters she did not feel were in her child's best interest . . . ."

Husband's written proffer filed with the court reflects discussions held with Dr. Stolberg respecting his role in the case.  Dr. Stolberg explained that he is a licensed psychotherapist who does psychotherapy, not mediation. According to husband, wife was first to consult Dr. Stolberg, a specialist in counseling children of divorcing parents, for the purpose of providing counseling to the parties' child.  Dr. Stolberg asked to interview both parents in support of his counseling goals for the child.  Over a period of eight months, the parties attended twenty-eight sessions with Dr. Stolberg, either individually or together.  Some of the sessions were held with the child and one of the parents in attendance.  Dr. Stolberg indicated that "what he does is to teach parents how to work together to promote their child's development and to minimize problems that already exist and that his work is

---

[3]The order, which was never entered, states:  This day came the parties in person, by counsel, and having representing [sic] to the Court that certain matters have been agreed to between them in mediation, respecting the care and custody of their daughter . . . ."

-

exclusively focused around remediation of problems and prevention of future problems."  He characterized mediation as "directed to equity and fairness in the resolution of disputes" and distinguished it as a process in which the psychological adjustment of the parties is not a consideration.  According to Dr. Stolberg, the parties were aware that he was not mediating their disputes "at all times in their meetings with him."

Barbara Hulburt, an expert in mediation, filed a letter with the court in response to a request made by husband's attorney in which she discussed the differences between mediation, as defined by the Code of Virginia, and therapy. Hulburt wrote:

> [a] mediator serves only as facilitator, that is, that the mediator is in charge of the process and the parties in control of the subject matter[, that] mediation is characterized by a limited number of meetings instead of an on-going relationship[, and that] mediation is defined through a series of discre[te] stages which make up a very specific process. . . . [F]undamentally, . . . a mediator is a process expert.  The parties to the dispute do not seek the mediator out because of any substantive expertise--in fact, it would be inappropriate for a mediator to offer any opinion with respect to the "best" outcome of the mediation.

As a general principle, evidence that tends to prove a matter which is properly at issue in a case is generally admissible.  Horne v. Milgrim, 226 Va. 133, 139, 306 S.E.2d 893, 896 (1983) ("Any fact, however remote, that tends to establish

-

the probability or improbability of a fact in issue is admissible."). See Charles E. Friend, The Law of Evidence in Virginia § 11.2 (4th ed. 1993). Such evidence "should be excluded only when its probative value is outweighed by policy considerations which make its use undesirable in the particular case." Farley v. Commonwealth, 20 Va. App. 495, 498, 458 S.E.2d 310, 311 (1995). See Friend, supra at § 11.2. Responsibility for evaluating whether the probative value of evidence is outweighed by policy considerations mitigating against admissibility rests within the discretion of the trial court. See Farley, 20 Va. App. at 498, 458 S.E.2d at 311-12. The party seeking to establish the existence of a privileged communication carries the burden of proof. See Commonwealth v. Edwards, 235 Va. 499, 509, 370 S.E.2d 296, 301 (1988) (stating that the proponent of an attorney-client privilege has the burden of proving "that an attorney-client relationship existed, that the communications under consideration are privileged, and that the privilege was not waived"); Robertson v. Commonwealth, 181 Va. 520, 540, 25 S.E.2d 352, 360 (1943) (finding that the party seeking to avoid production of a document on the ground that it is a privileged communication has the burden of establishing his contention).

We find that wife did not satisfy her burden of proving the communications with Dr. Stolberg were privileged because the evidence fails to support the trial court's conclusion that Dr.

-

Stolberg acted as a mediator in the dispute between the parties on the issues of custody and visitation.  The only evidence wife presented on the issue of Dr. Stolberg's role was her understanding of that role and the characterization she or others had placed on it.  Absent from wife's case was substantive evidence from which the trial court could conclude that Dr. Stolberg used a facilitative, rather than a therapeutic, problem solving methodology.  See Code § 8.01-581.21 (defining "mediation" as a process by which a mediator assists and facilitates two or more parties to a controversy in reaching a mutually acceptable resolution of a controversy).  Wife's description of Dr. Stolberg as a mediator cannot substitute for evidence that he, in fact, acted as a mediator in the parties' custody dispute.  See Edwards, 235 Va. at 509, 370 S.E.2d at 301.

Furthermore, husband's evidence regarding Dr. Stolberg's role shows it to be wholly inconsistent with mediation.  Dr. Stolberg described the sessions with the parties and their child as psychotherapeutic, the focus of which was directed to the child's developmental needs and the parties' relationship with her.  To that end, a wide variety of psychological tests and evaluations were administered to husband.  Dr. Stolberg described his work as "most specifically addressed toward remediation in this case because of the child's increased anxiety," having identified "four pathogenic processes which

-

concerned him as a psychotherapist."  He also focused on

addressing the relationship between wife and child through the

therapeutic process.

Dr. Stolberg's role as described contrasts broadly with

that delineated in Hulburt's letter:

> In contrast [to a mediator], a therapist is
> sought out for the knowledge, experience,
> and expertise he or she brings to the
> subject matter of the dispute.  While a
> therapist may do problem-solving work on
> particular issues with clients, it is based
> on the input of the therapist as an expert
> in the subject matter of the particular
> problem (relationships, psychological
> development, child rearing, etc.).  The
> mediator, as facilitator, may help the
> parties see that they need to seek out such
> expert advice . . . but does not offer such
> advice himself.
>
> *      *      *      *      *      *      *
>
> In a situation in which a subject-matter
> expert (i.e. a psychologist, therapist, or
> social worker) is sought out for the purpose
> of giving advice and counsel with respect to
> a particular problem, it would be
> inappropriate to label the work done with
> that expert as mediation if:  (a) it
> involved advice from the mental health
> professional; (b) it was entered into as an
> evaluation or as therapy; (c) it was entered
> into without any formal agreement to mediate
> or any other indication that the parties and
> the therapist considered it a mediation.

Here, the evidence, including wife's testimony that Dr. Stolberg

was "pressing" her to reach agreement on matters relating to

Elyse, shows that Dr. Stolberg's relationship with the parties

was that of therapist, not mediator.  We find no foundation for

-

the trial court's conclusion that Dr. Stolberg mediated the parties' dispute.

For these reasons, we find the trial court erred in excluding Dr. Stolberg's testimony pursuant to Code § 8.01-581.22.  Because Dr. Stolberg's expected testimony encompassed matters relating to the psychological status of the parties and the child, the parties' relationship with the child, the parties' parenting styles, and other issues relevant to custody and visitation, we find the error was not harmless.  See Edwards v. Commonwealth, 10 Va. App. 140, 143, 390 S.E.2d 204, 206 (1990).  Accordingly, we reverse and remand.[4]

### III.

### CLASSIFICATION OF IRA ACCOUNTS

Husband next contends the trial court erred by classifying two IRA accounts, one with American Funds and the other with Crestar, as marital property.  Husband contends the American Funds account is entirely his separate property and the Crestar account is part marital and part separate property.  Husband admits the American Funds and Crestar accounts were established during the parties' marriage and prior to their separation. Husband contends, however, he presented sufficient evidence to

---

[4]Because the decision of the trial court is reversed and remanded for the purpose of considering erroneously excluded evidence on the issues of custody and visitation, we do not reach husband's allegations of error regarding the court's disposition of these issues.

-

trace the funds in the American Funds and Crestar accounts back to two pre-marital Keogh accounts, which are presumed to be separate property.  See Barnes v. Barnes, 16 Va. App. 98, 104, 428 S.E.2d 294, 299 (1993).  We disagree.

At trial, husband testified that he opened two Keogh accounts with Heritage Savings & Loan Association prior to marrying wife.  Husband then testified to a series of post-marriage transfers and deposits involving the Heritage accounts.  These transactions involved the creation of several new accounts and the movement of these funds from one account to the next before they ultimately reached the American Funds and Crestar accounts at issue here.  Husband admitted commingling his allegedly separate funds with marital funds over the course of the marriage.  In support of his testimony, husband relied on a flow chart, which the court received as demonstrative evidence, and certain financial documents to trace the source of his allegedly separate funds in the American Funds and Crestar accounts back to his pre-marital Keogh accounts.  Husband introduced the chart and financial documents as Exhibit 8 at a deposition on April 9, 1997, explaining what they purported to show at that time.

We find no error in the trial court's conclusion that husband presented insufficient evidence of tracing and no error in the court's classification of the funds at issue as marital property.  Husband failed to prove by a preponderance of the

-

evidence that any portion of the funds in the American Funds and Crestar accounts are his separate property.  See Code § 20-107.3(A)(3)(d)-(e); Barker v. Barker, 27 Va. App. 519, 531, 500 S.E.2d 240, 246 (1998); Rahbaran v. Rahbaran, 26 Va. App. 195, 207, 494 S.E.2d 135, 141 (1997).

We find it unnecessary to recite every step of the complicated series of transactions leading to the deposit of the funds at issue into the American Funds and Crestar accounts. For the purposes of our decision, it is sufficient to recite the following relevant evidence pertaining to each account.

As to the American Funds account, husband claims he established the account on May 23, 1986 with a roll over deposit of $5,000 of allegedly separate funds from another IRA account with Investors Savings.  Husband contends he made no further deposits or contributions to the American Funds account after 1986 and claims its balance, $13,831.26, as separate property, the result of passive interest earnings.  Assuming without deciding that appellant's claim regarding the deposit of $5,000 of separate property is true, the evidence does not support his assertion that the balance of the American Funds account is his separate property.

Before the trial court, husband offered only one financial statement showing the activity in the American Funds account after 1986.  This statement shows the account's activities during 1996 and a balance of $13,831.26 on December 31, 1996.

-

Husband presented no other statements regarding the activity in this account over the preceding nine years of its existence, including any statement showing the rate of interest that it may have earned.  Thus, husband's claim that no other contributions were made to the account and that the account's growth was solely attributable to passive interest earnings rested on his testimony and the demonstrative flow chart alone.  "It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony."  Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (en banc).  Furthermore, the flow chart, as a demonstrative, or illustrative, exhibit that played no actual part in the events before the court and that husband offered to explain and clarify his testimony, had no independent probative value.  See Kehinde v. Commonwealth, 1 Va. App. 342, 347, 338 S.E.2d 356, 358 (1986) (approving of the use of illustrative evidence "to clarify [a] witness' explanation and to insure a common understanding between the witness and [the trier of fact] as to the events which took place"); Saunders v. Commonwealth, 1 Va. App. 396, 397-98, 339 S.E.2d 550, 551 (1986) (indicating that photographs introduced for the purpose of illustrating a witness' testimony do not constitute substantive evidence in the case); Friend, supra at § 13.1 (defining illustrative evidence as that which "played no part in the

-

events of the case but which is introduced to assist the jury in understanding what happened in the case" and "to demonstrate the meaning of a witness' testimony . . . "). See also United States v. Paulino, 935 F.2d 739, 752 (6th Cir.) (holding that charts summarizing documents or testimony may be admitted as demonstrative evidence under Rule 611(a) and "should be accompanied by a limiting instruction which informs the jury of the summary's purpose and that it does not constitute evidence"), cert. denied, 502 U.S. 914 (1991); Sykes v. Floyd, 308 S.E.2d 498, 499 (N.C. Ct. App. 1983) (stating that photographs introduced to illustrate testimony are not admissible as substantive evidence); Smith v. Ohio Oil Co., 134 N.E.2d 526, 530 (Ill. App. Ct. 1956) ("Demonstrative evidence . . . is distinguished from real evidence in that it has no probative value in itself, but serves merely as a visual aid to the jury in comprehending the verbal testimony of a witness."). It follows that the trial court was also entitled to give the flow chart no weight. See Jurado v. Jurado, 892 P.2d 969, 975-76 (N.M. Ct. App. 1995) (finding that any error in the admission of demonstrative exhibits calculating the rates of return on two properties was harmless because the trial court did not rely on the exhibits in determining an award). In short, the trier of fact determines the credibility and weight of the evidence. It was therefore entitled to give no weight to husband's testimony that the funds in the American Funds account

-

were maintained as separate property, particularly in the absence of documentary evidence establishing the integrity of the funds as separate property.  We accordingly find no error in the court's refusal to classify the American Funds account as husband's separate property.

As to the Crestar account, husband opened a new account with Investors Savings in 1988 with $5,070.88 of admittedly marital property.  Husband offered an annual financial statement showing the initial deposit and appellant's interest earnings in 1988.  Subsequently, Crestar Bank bought Investors, thus converting husband's account into the Crestar account at issue.  Husband contends, in 1989, he rolled over the balance of an IRA account with Dominion Federal Savings, containing marital and separate funds, into the Crestar account.[5]  At the end of 1996, the Crestar account contained $18,744.92, of which husband claims $3,561.40 as separate property, the portion of separate property contributed from the Dominion Federal account plus passive interest earnings.  Husband offered one other statement, which verifies the balance of the Crestar account at the end of 1996 and shows the account's activities during the last quarter of 1996, but nothing further.

---

[5]Husband rolled over $6,752.95 from the Dominion Federal account into the Crestar account, of which he claims $2,263.37 was his separate property.

Husband's tracing evidence with respect to this claim suffers the same infirmity as that which exists with respect to his claim of separate property in the American Funds account. We assume for the purpose of this discussion that a portion of the funds husband rolled over from the Dominion Federal account were sufficiently identified as separate. No documentation, however, shows that the claimed separate funds were deposited in the Crestar account in 1989. Moreover, other than the two statements showing the account's initial deposit in 1988 and the account's balance at the end of 1996, respectively, husband offered no documentation of the activity within the Investors/Crestar account, including what rate of interest the account might have enjoyed. Thus, other than husband's testimony and his flow chart, there is no evidence that husband deposited separate funds from Dominion Federal into the Crestar account, no evidence of the activity within the Crestar account for a period of nearly eight years, and no evidence corroborating husband's testimonial evidence that the growth of the Crestar account after 1988 was solely passive in nature, the result of interest earnings. In short, there is no basis upon which to identify what portion of this account was husband's separate property at the time of the equitable distribution hearing.

For the foregoing reasons, we affirm the trial court's finding that husband failed to meet his burden to trace the

-

funds in the American Funds and Crestar accounts to a contribution of separate property and the court's classification of these funds as marital property.

IV.

TANGIBLE PERSONAL PROPERTY

Husband next contends the trial court erred by failing to order or address the division of tangible personal property in its equitable distribution award. We find no merit in husband's contention.

During depositions, the parties stipulated that they had "determined not to attempt to resolve the division of tangible personalty within the home at this time . . . and that [they would] not present additional evidence regarding the value to th[e] Court." The parties further agreed to "work out the division of all the tangible personalty."

However, during the parties' final appearance before the court on April 22, 1997, husband's counsel asked the court to equitably distribute the parties' tangible personal property. Husband's counsel presented a document to the court itemizing the personal property of the parties, appraising the property's value, and presenting a proposed distribution plan.[6] In response to husband's document, the court noted:

> More and more in these cases I'm getting
> mixed signals. The problem is those mixed

---

[6]This document, however, was not admitted into evidence.

-

signals result in equities to one side or the other or both. I'm going to put counsel on notice right now, I'm going to deal with the personal property with the evidence that I have before me.

\* \* \* \* \* \* \*

As I recall during the depositions, counsel agreed, they stated that they would deal with personal property outside the Court's forum, but today I get this and I note -- and by this I'm talking about the handout that was provided by counsel for [husband]. It deals with the appraisals from Owen Valentine and other appraisals. I don't know what I'm supposed to work with that or not work with that.

Apparently attempting to accommodate husband's request, the court invited the parties to file a "wish list" within five days, summarizing their positions as to the distribution of personal property. The court stated, "Give me some direction on what you want me to do with this personal property, . . . either deal with it or not deal with it, that's fine, but I can't deal with mixed signals." The parties then had the following dialogue:

[WIFE'S COUNSEL]: I think counsel has agreed on the record that we will not have the Court value the personal property and that we will divide it through the parties. . . .

THE COURT: I need to know what you want me to do, and again, I'm getting mixed signals.

[HUSBAND'S COUNSEL]: I think we need to talk about it.

THE COURT: Let me know in five days what you want to do . . . .

-

Within the allotted time, husband filed a "Request for Settlement" that proposed three alternative distributions of the parties' assets, including tangible personal property. The record contains no evidence of what, if anything, wife filed with the court.

In its letter opinion of May 28, 1997, the court found that the parties agreed they would work out the equitable distribution of personal property, citing the parties' stipulation. Although noting the parties had been unable to agree on the distribution of personal property, the court declined to address the issue, stating it would not include personal property in its equitable distribution because "the parties have failed to submit sufficient evidence." The court reiterated this finding in its final decree.

Although Code § 20-107.3 mandates that trial courts determine the ownership and value of all real and personal property upon request of either party, "'[t]he burden is always on the parties to present sufficient evidence to provide the basis on which a proper determination can be made, and the trial court in order to comply . . . must have the evidence before it . . . to grant or deny a monetary award.'" Bowers v. Bowers, 4 Va. App. 610, 617, 359 S.E.2d 546, 550 (1987) (quoting Hodges v. Hodges, 2 Va. App. 508, 516, 347 S.E.2d 134, 139 (1986)). When the parties have had a reasonable opportunity to provide the

-

necessary evidence to prove the class or value of property but have failed to do so by lack of diligence, a court may make a monetary award without giving consideration to the class or value of every item of property.  See id. at 618, 359 S.E.2d at 551.  The court must give parties reasonable opportunity to develop and present evidence regarding the class and value of property, must not arbitrarily refuse to classify or value property when sufficient evidence exists, and must not arbitrarily reject credible evidence of value.  See id.

Here, the parties were given opportunity over the course of the proceedings to present evidence regarding the class and value of their tangible personal property.  The parties agreed, however, to withdraw this issue from the court, to reach agreement themselves with respect to distribution, and to present no evidence on the issue.  At the latest possible stage of the proceedings, husband attempted, over wife's objection, to renege on the parties' stipulation, asking the court to classify and value the parties' personal property.  The court properly declined to do so.  See Bauer v. Harn, 223 Va. 31, 36, 286 S.E.2d 192, 194 (1982) ("Absent a challenge to the authority of an attorney to make them, stipulations are definitive of issues."); Southeastern Tidewater Area Manpower Authority v. Coley, 221 Va. 859, 862, 275 S.E.2d 589, 591 (1981) (stating that stipulations should be encouraged and "that a party should not be permitted to assert at trial a contention which is

-

contrary to a stipulation to which that party, by counsel or otherwise, has freely and in good faith agreed"); McLaughlin v. Gholson, 210 Va. 498, 500, 171 S.E.2d 816, 817 (1970) (citing favor for the use of stipulations and other pretrial techniques designed to narrow the issues and expedite trial or settlement of litigation).

Based on their agreement to withdraw the distribution of personal property from the court's consideration and resolve the issue themselves, the parties presented no evidence of the items to be distributed or their value. In the absence of evidence upon which to base an equitable distribution of the parties' tangible personal property, no distribution could be made and the court did not err in failing to address the issue. See Bowers, 4 Va. App. at 619-20, 359 S.E.2d at 552. Under the circumstances of this case, we find that the court did not abuse its discretion in deciding "to deal with the personal property with the evidence . . . before" it and by declining to relieve the parties of their proffer to reach agreement with respect to this issue. We accordingly affirm the court's decision on this issue.

V.

EQUITABLE DISTRIBUTION

Husband next contends the trial court erred by failing to award him an equitable distribution exceeding one-half of the parties' marital property. Husband asserts the trial court did

-

not correctly apply the statutory factors set forth in Code § 20-107.3(E).

In its letter opinion of May 28, 1997, the court equally divided the marital assets and liabilities of the parties, stating it "considered the factors in Code § 20-107.3(E) in light of the evidence."  The court provided no particular findings regarding the applicable factors.

Husband cites the following evidence in support of his position:  1) his ownership and extensive improvements to the parties' first residence prior to marriage; 2) his contribution of eighty-nine percent of the parties' salaried income; 3) his testimony that he performed fifty percent of the non-monetary contributions to the well-being of the family; and 4) his post-separation monetary contributions to the parties' property in the sum of $19,830.

Wife responds the court based its decision on substantial evidence and in proper consideration of the statutory factors. Wife asserts:  1) she stayed home for several years, by agreement, to care for Elyse; 2) her time at home enabled husband to focus on his career and to travel for extended periods; 3) she contributed to the maintenance and care of marital property, including the marital home; 4) she made monetary contributions prior to the birth of Elyse; and 5) husband treated her abusively throughout their marriage.

-

"In reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case." Klein v. Klein, 11 Va. App. 155, 161, 396 S.E.2d 866, 870 (1990). Unless the record shows that the judge has abused his or her discretion by misapplying the statutory factors, the judge's determination will not be reversed on appeal. See id.

Based on our review of the record, we find that the trial court did not abuse its discretion by equally distributing the marital property in this case. See Code § 20-107.3(E) (stating the court shall consider, inter alia, the duration of the parties' marriage, the monetary and non-monetary contributions of each party to the well-being of the family, the monetary and non-monetary contributions of each party to the acquisition, care, and maintenance of marital property, and the circumstances contributing to the dissolution of the marriage). The parties were married for over twelve years before permanently separating in 1996. For the first four years of their marriage, wife worked full-time outside the home. In 1988, wife left her job to increase the probability of becoming pregnant. After the birth of Elyse in November 1989, wife remained at home to care for Elyse until July 1996. Husband continued working, increasing his personal income during the years wife stayed at

-

home.  It is undisputed that, in connection with his employment, husband spent significant periods of time away from his family after Elyse's birth.  Further, the parties stipulated that wife's "income capacity" would be higher today if she had continued working.  Although the parties' testimony conflicted as to the share of household responsibilities that each assumed during their marriage, the credibility of witnesses and the weight to be given their testimony is a matter committed to the sound discretion of the trial court.  See Street, 25 Va. App. at 387, 488 S.E.2d at 668; see also Hurt v. Hurt, 16 Va. App. 792, 799, 433 S.E.2d 493, 498 (1993) (finding the trial court did not err in choosing to accept the testimony of husband's witness, notwithstanding conflicting testimony of wife's witness, when determining classification of property).  Similarly, the trial court was entitled to find wife's testimony regarding husband's abusive treatment during the marriage credible and to reject husband's testimony regarding wife's failure to provide emotional support or household services in determining the circumstances leading to the dissolution of the marriage that affected the value of the marital estate.  See Street, 25 Va. App. at 387, 488 S.E.2d at 668.  Thus, our review of the record reveals sufficient evidence on which the trial court could have based its equal distribution of the parties' marital property.

## VI.

### ALLEGED WASTE OF MARITAL FUNDS BY HUSBAND

Wife contends the trial court erred in ruling that husband did not waste $15,183.52 of marital funds in the Crestar IRA account after their separation on January 31, 1996. We find this argument to be without merit.

Husband's evidence showed that the Crestar account contained $18,744.92 at the end of 1996. Husband acknowledges that he withdrew $15,288.58 of marital funds from the Crestar account on March 10, 1997 and testified that he deposited these funds into a savings account with Crestar Bank on the same day. Husband further testified he subsequently spent these marital funds to pay marital debts, including two mortgages and two credit card bills, and legal expenses incurred by him during the parties' divorce proceedings. In support of his testimony, husband submitted two lists detailing each expenditure as well as copies of various financial statements, receipts, money orders, and cashier's checks, which verified husband's lists and testimony regarding how these funds were spent.

Waste or dissipation of assets occurs when "one spouse uses marital property for his own benefit and for a purpose unrelated to the marriage at a time when the marriage is undergoing an irreconcilable breakdown." Amburn v. Amburn, 13 Va. App. 661, 666, 414 S.E.2d 847, 850 (1992). As husband does not dispute that he withdrew the marital funds at issue and put them into an

-

account under his sole dominion and control, husband had the burden to establish by a preponderance of the evidence that the funds were used for a proper purpose. See Alphin v. Alphin, 15 Va. App. 395, 402, 424 S.E.2d 572, 576 (1992). "Once the aggrieved spouse shows that marital funds were withdrawn or used after the breakdown, the burden rests with the party charged with dissipation to prove that the money was spent for a proper purpose." Clements v. Clements, 10 Va. App. 580, 587, 397 S.E.2d 257, 261 (1990). We have previously held that marital funds spent for living expenses, attorney's fees for the divorce proceedings, and other necessities of life while the parties are separated do not constitute dissipation. See Decker v. Decker, 17 Va. App. 12, 19, 435 S.E.2d 407, 412 (1993); Alphin, 15 Va. App. at 403, 424 S.E.2d at 576.

Here, husband provided sufficient evidence for the court to conclude that he did not waste $15,288.58 of marital funds in the Crestar account. Husband provided the court with two detailed lists showing each expenditure of the funds at issue. These expenditures included payments on two mortgages and two credit card debts incurred during the marriage and payment of husband's legal fees incurred over the course of the divorce proceedings. Husband submitted financial documentation supporting each and every expenditure detailed by his lists and by his testimony. Wife presented no evidence to suggest the Crestar funds were used for any other purpose. The trial court

-

found husband's evidence credible, stating in its final decree that husband "proved he spent these proceeds on legitimate post-separation expenses."  As the court's ruling is supported by credible evidence, that ruling will not be disturbed on appeal.  See Alphin, 15 Va. App. at 403, 424 S.E.2d at 576; Amburn, 13 Va. App. at 667, 414 S.E.2d at 851.

For the foregoing reasons, we reverse the trial court's ruling excluding Dr. Stolberg's testimony as privileged under Code § 8.01-581.22 and remand the issues of custody and visitation for renewed consideration in light of this holding. As to husband and wife's remaining allegations of error, we affirm the trial court's decision.[7]

Affirmed in part
and reversed in part.

---

[7]Based on the circumstances of this case, we deny the parties' respective requests for an award of attorneys' fees and costs related to this appeal.

-