COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Bumgardner and Clements

STEVE STARKELL

MEMORANDUM OPINION[*] BY
v.   Record No. 2227-01-4    JUDGE JEAN HARRISON CLEMENTS
NOVEMBER 26, 2002
THOMAS L. GERIS AND
 GLENDA J. GERIS

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
James W. Haley, Jr., Judge

(Timothy W. Barbrow, on brief), for
appellant. Appellant submitting on brief.

No brief or argument for appellees.

No brief or argument by the child's
guardian ad litem.

Steve Starkell appeals from a final order of the trial court

granting the petition of Thomas and Glenda Geris to adopt

Starkell's birth daughter, A.Q.S. Starkell contends the trial

court erred in finding (1) his consent to the adoption was being

withheld contrary to the best interests of the child, (2) his

continued relationship with his daughter would be detrimental to

her welfare, and (3) the adoption was in the best interests of the

child. Finding no error, we affirm the judgment of the trial

court.

─────────────

* Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

## I.  BACKGROUND

The Gerises filed a petition to adopt A.Q.S. on September 14, 2000.  The natural mother gave her written consent to the adoption on September 26, 2000.  Starkell refused to consent to the adoption.

The trial court conducted a hearing on the Gerises' petition to adopt A.Q.S. on August 6, 2001.[1]  The evidence established that A.Q.S. was born to her unwed parents, Deborah Lynn Bacon and Starkell, on December 17, 1995.  Starkell testified Bacon had drug problems and he was the child's primary caregiver from her birth until June of 1997, when he was no longer able to care for the child.  At that time, Starkell left A.Q.S., who was one and a half years old, with the Gerises, whom he had met only one time previously.  The child has resided with the Gerises continuously since August of 1997.

Mrs. Geris was awarded temporary custody of A.Q.S. in November of 1997.  Starkell subsequently visited his daughter one to two times a month for a couple of hours.  Because he had no

_____

[1] The record in this case contains a written statement of facts in lieu of a transcript of this hearing.

-

regular job or place to live, Starkell had very limited overnight visits.  According to Mrs. Geris, Starkell referred to the child as his "little meal ticket" because he could obtain free meals from restaurants and strangers when A.Q.S. was with him.  Mrs. Geris was awarded full custody of the child in January of 1999.

On December 10, 1999, Starkell entered Alford pleas to two counts of aggravated sexual battery and was found guilty of having sexually abused A.Q.S. between April 1, 1997, and June 30, 1998. He was sentenced to ten years on each charge, to run consecutively, with seven years suspended on each charge. Starkell was also ordered to have no contact with A.Q.S.

Mrs. Geris testified that, soon after A.Q.S. came to live with her, she noticed that the child exhibited severe emotional problems.  She would not eat, allowed food to sit in her mouth for up to two hours, often woke up in the night screaming from severe night terrors, appeared to be developmentally delayed, and was extremely aggressive.  According to Mrs. Geris, the child's behavior was always worse after visitation with Starkell.  Mrs. Geris also testified that, following the child's visitation with Starkell, A.Q.S. would describe a sexual game she played with a man.  The child was subsequently diagnosed with Post Traumatic Stress Disorder resulting from the abuse she suffered from Starkell.

According to Mrs. Geris, however, the child has received counseling and has greatly improved.  She now sleeps through the

-

night, eats well, enjoys school, and is a happy, well-adjusted child.  Although A.Q.S. is still developmentally delayed, Mrs. Geris works with her teachers to assist the child.  The child has also adjusted well to the Gerises' home.  She assists with household chores, including feeding the two horses, and has her own cat.  She is also very attached to the Gerises' six-year-old son.

The Gerises were married in 1990.  It was the second marriage for both of them.  In addition to their six-year-old son, they both have adult children from their previous marriages.  They are purchasing the home where they have lived together for ten years.  They have a large family support system in the area, and both are employed, although Mrs. Geris arranges her work schedule to be home for A.Q.S. and her son, including taking time off in the summer to be with them.

According to Mrs. Geris, she and Mr. Geris are the only parents A.Q.S. knows.  When shown pictures of her birth mother and Starkell, A.Q.S. has no memory of them.  The child has had no contact with any other members of Starkell's family since she began living with the Gerises.

Mrs. Geris, who was forty-eight years old at the time of the adoption hearing, admitted she had had two of her children removed from her home when she was in her early twenties because she could not care for them.  She testified she had had a drug problem then but is no longer using drugs.  Mrs. Geris also admitted that one

-

of her children had been committed to the Department of Juvenile Justice and that, on one occasion, she had been found in contempt of court for failing to pay child support.  Mr. Geris admitted he had been convicted of driving under the influence in the early 1990s and again in 1999.

At the adoption hearing, Starkell denied having abused A.Q.S. and stated he pled guilty to save her from the ordeal of a trial. He testified the Gerises not only accused him of the abuse charges in order to win custody of the child but also denied him access to the child after he had placed her with them.  Starkell further testified the police, prosecutor, and judge, along with the Gerises, were responsible for his convictions.  Starkell also testified he loves A.Q.S. and wants to have a continuing relationship with her after he is released from prison.  However, other than to state that, upon his release from prison, he would find the person who really abused his daughter, Starkell had no explanation as to how he would have a relationship with A.Q.S. despite being ordered by the court to have no contact with her.

According to a report of investigation by the Stafford County Department of Social Services introduced into evidence at the hearing, the Gerises are suitable parents for adoption and Starkell's consent to the adoption is being withheld contrary to A.Q.S.'s best interests.  The social worker who prepared the report observed that Starkell's refusal to consent to the adoption is "an act of self[ish]ness."

-

At the conclusion of the hearing, the trial court granted the Gerises' petition for adoption, finding (1) Starkell's consent to the adoption was being withheld contrary to the best interests of the child, (2) Starkell's continued relationship with the child would be detrimental to the child, and (3) the adoption was in the best interests of the child.

Starkell challenges those findings on appeal.

## II. ANALYSIS

Under familiar principles of appellate review, we consider the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Gerises, the parties who prevailed below. See Farley v. Farley, 9 Va. App. 326, 328, 387 S.E.2d 794, 795 (1990). Thus, all evidence in conflict with the Garises' evidence must be disregarded. See Garst v. Obenchain, 196 Va. 664, 668, 85 S.E.2d 207, 210 (1955). When the trial court's decision is based, as here, on an ore tenus hearing, it "is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Frye v. Spotte, 4 Va. App. 530, 537, 359 S.E.2d 315, 319-20 (1987). Furthermore, it is well settled that "the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Anderson v. Anderson, 29 Va. App. 673, 686, 514 S.E.2d 369, 376 (1999).

-

"An adoption over objection by a natural parent should not be granted except upon clear and convincing evidence that the adoption would be in a child's best interest and that it would be detrimental to continue the natural parent-child relationship." Frye, 4 Va. App. at 532, 359 S.E.2d at 317. Moreover, "[a]doption of a child may be ordered without the consent of the child's birth parent if that parent's consent to the adoption is being withheld 'contrary to the best interests of the child as set forth in [Code] § 63.1-225.1.[2]'" Hickman v. Futty, 25 Va. App. 420, 426, 489 S.E.2d 232, 234 (1997) (footnote added) (quoting Code § 63.1-225(F)[3]). In making that determination, the trial court must "consider the child's best interests vis-à-vis both the prospective adoptive parents and the parent whose consent to the adoption is being withheld." Id. at 432, 489 S.E.2d at 237.

In determining whether the withholding of consent is contrary to the child's best interests, the court must "consider whether the failure to grant the petition for adoption would be detrimental to the child." Code § 63.1-225.1. In making that determination, the court must consider "the non-consenting parent's fitness, or ability, to parent the child as well as the relationship the non-consenting parent maintains with the child

_____

[2] Subsequent to the entry of the final order in this case, Code § 63.1-225(F) was repealed and reenacted as current Code § 63.2-1203.

[3] Likewise, Code § 63.1-225.1 was subsequently repealed and reenacted as current Code § 63.2-1205.

-

and other children, if any."  <u>Hickman</u>, 25 Va. App. at 431, 489
S.E.2d at 237.  In evaluating the non-consenting parent's
relationship with the child, the court must consider "the
non-consenting parent's willingness to provide for the child, that
parent's record of asserting parental rights, taking into
consideration the extent to which, if any, such efforts were
thwarted by other people, and the quality of the parent-child
relationship."  <u>Id.</u> at 431-32, 489 S.E.2d at 237.

> Where the evidence reveals that adoption
> would be in the child's best interests and
> the continued relationship with the
> non-consenting parent would be detrimental,
> it follows that the failure to grant the
> adoption would be detrimental to the child.
> In such a case, the conclusion that consent
> is withheld contrary to the child's best
> interests is compelled.

<u>Id.</u> at 432, 489 S.E.2d at 237-38.

Here, the evidence clearly supports the trial court's finding
that Starkell's continued relationship with A.Q.S. would be
detrimental to the child.  Not only did Starkell relinquish
custody of his one-and-a-half-year-old daughter to people he had
met only once before because he was no longer able to care for
her, he was subsequently convicted of having sexually abused his
daughter between April 1, 1997, and June 30, 1998, and ordered to
have no contact with her.  Notwithstanding Starkell's speculative
and unsupported claims that "it is possible that the issues which
lead [sic] to the abuse could be dealt with through . . . therapy"
and that he "will be free upon his release to petition the [c]ourt

-

for . . . modification" of the order prohibiting him from seeing his daughter, "'past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'"  Linkous v. Kingery, 10 Va. App. 45, 56, 390 S.E.2d 188, 194 (1990) (quoting Frye, 4 Va. App. at 536, 359 S.E.2d at 319).

In addition, even were we to assume that Starkell might be able at some point in the future to "deal with" the issues that led him to abuse his daughter and to obtain modification of the order prohibiting him from seeing his daughter, the record offers no hint as to when, if ever, such events might occur.  Indeed, the fact that Starkell continues to blame others, rather than himself, for his convictions plainly indicates he has made little, if any, progress in that regard so far.  "It is not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities."  Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The evidence also clearly supports the trial court's finding that the adoption of A.Q.S. by the Gerises is in the child's best interests.  A.Q.S., who suffered severe behavioral and emotional problems as a result of Starkell's sexual abuse, has, under the custody and care of the Gerises, undergone counseling and been able to recover in large part from that ordeal.  She has adjusted well to life in the Gerises' home, enjoys school, and is attached

-

to the Gerises' six-year-old son.  The Gerises have essentially rescued A.Q.S. from the trauma caused by Starkell, given her a nurturing and stable home life that meets her special needs, and allowed her to have a secure, flourishing childhood.  They continue to provide her with financial and emotional support, and the child is thriving under their care.

Moreover, the Gerises are the only parents A.Q.S. knows at this point in her life.  Starkell, thwarted from seeing A.Q.S. by his own criminal behavior, has had no relationship with his daughter since his conviction.  A.Q.S., who was five and a half years old at the time of the hearing, knows little if anything about Starkell and certainly has no awareness of him as her father.

Starkell argues that "serious questions exist about the fitness of the Gerises as parents" because of their past problems. The fact, he argues, that Mrs. Geris had two children from her first marriage removed from her custody and that Mr. Geris was recently convicted of driving under the influence is evidence that the adoption is not in the best interest of the child.  We disagree.

Although Mrs. Geris lost custody of two of her children in her early twenties, had a drug problem, and was found to be in contempt of court for failing to pay child support, the evidence is uncontroverted that she has remedied those problems and has been a law-abiding, dedicated, and loving mother and caregiver to

-

her six-year-old son and A.Q.S. Furthermore, although Mr. Geris was convicted of driving under the influence as recently as 1999, conduct which clearly causes concern and cannot be condoned, there is no evidence that his unlawful conduct placed his son or A.Q.S. in danger or otherwise rendered him unfit as a parent.

Therefore, the record supports the trial court's finding that the Gerises presented clear and convincing evidence that the adoption was in A.Q.S.'s best interests and that Starkell's continued relationship with A.Q.S. would be detrimental to the child. It necessarily follows, then, that the failure to grant the adoption would be detrimental to A.Q.S. and that Starkell's consent to the adoption was being withheld contrary to A.Q.S.'s best interests. See Hickman, 25 Va. App. at 432, 489 S.E.2d at 237-38.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.