COURT OF APPEALS OF VIRGINIA


Present:   Judges Clements, Haley and Beales
Argued at Richmond, Virginia


TYRONE L. WHELESS

                                              MEMORANDUM OPINION[*] BY
v.        Record No. 2939-06-2            JUDGE JAMES W. HALEY, JR.
                                                NOVEMBER 6, 2007
COMMONWEALTH CATHOLIC CHARITIES


FROM THE CIRCUIT COURT OF HENRICO COUNTY
Daniel T. Balfour, Judge

Janet E. Brown (Janet E. Brown, P.C., on brief), for appellant.

Christopher M. Malone; Jeffrey L. Galston, Guardian *ad litem* for the
minor child (Thompson McMullan, on brief), for appellee.


Tyrone L. Wheless ("appellant") appeals the termination of his parental rights.  He

maintains the trial court:  (1) erred in considering a foster care plan because that plan was not

filed prior to or contemporaneous with a petition seeking approval of an entrustment agreement

and termination of his parental rights, and because that plan was deficient in form and substance;

and (2) erred in concluding the evidence sufficed to justify termination.  We find the first

assignment of error defaulted, and affirm the decision of the trial court as to the second.

STATEMENT OF FACTS

Cassandra Humphrey, unmarried, gave birth to a child here designated B.B.H. on

September 30, 2005.  On October 3, 2005, Humphrey executed an "Entrustment Agreement for

Permanent Surrender of Child" placing B.B.H. with Commonwealth Catholic Charities ("CCC").

The agreement stated that CCC has "the right to place such child for adoption."  In conjunction

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

with the agreement, Humphrey executed an affidavit naming appellant the father. Upon receiving by certified mail a copy of the entrustment agreement from CCC, appellant denied he was the father, but requested a DNA test to see "if it's mine." At the time of this response, appellant was in the penitentiary, having been convicted of felony shoplifting on March 5, 2005. Upon release from the hospital, when he was 3 days old, B.B.H. was placed with a licensed foster care family. Subsequent DNA testing revealed that appellant was the father of B.B.H.

On November 2, 2005, CCC filed a petition in the Juvenile and Domestic Relations District Court of Henrico County ("JDR court"), pursuant to Code § 63.2-1222, seeking orders "terminating the residual parental rights of Tyrone Wheless, accepting the Entrustment Agreement and terminating the residual parental rights of Cassandra Humphrey, and granting full custody of [B.B.H.] to Commonwealth Catholic Charities, with leave to place such child for adoption."[1] The JDR court appointed separate counsel for B.B.H. and appellant. On March 20, 2006, a foster care plan with the goal of adoption, dated that day, was filed during a short hearing in JDR court. No objection was made as to the introduction of the March 20 plan. The matter was continued for a hearing on the merits, which was held on May 11, 2006. Appellant was present, having been transported from Dillwyn Correctional Center where he was then confined.

The proceedings were conducted pursuant to Code § 16.1-277.01(D), which provides in part that "if the petition seeks approval of a permanent entrustment agreement which provides for the termination of all parental rights . . . the court shall make a finding, based upon clear and convincing evidence, whether termination . . . is in the best interest of the child."

By order entered May 24, 2006, the JDR court found by "clear and convincing evidence that Tyrone Leon Wheless is withholding his consent to adoption contrary to the best interest of the child as set forth in Va. Code § 63.2-1205." The court then ordered: (1) "no further consent

---

[1] The JDR court further found appellant to be the biological father of B.B.H.

to adoption shall be required from Tyrone Leon Wheless"; (2) CCC "shall have custody of [B.B.H.] with leave to place such child for adoption"; and (3) "the Entrustment Agreement is accepted and all rights of Cassandra L. Humphrey to [B.B.H.] . . . are also hereby terminated."

Appellant noted his appeal on the sole issue of the termination of his parental rights. That appeal was heard on August 18 and September 8, 2006. The evidence in circuit court may be summarized as follows.

Tammy Curtis Hudson, adoption counselor for CCC, related the circumstances surrounding execution of the entrustment agreement and advised B.B.H. was in temporary foster care prior to the May 11, 2006 JDR court hearing. On June 16, 2006, B.B.H. had been placed with his prospective adoptive family. A foster care plan dated August 10, 2006, with the goal of permanent placement and adoption, was offered into evidence as CCC's Exhibit 1. The following exchange occurred: "THE COURT: Any objection?" Counsel for Wheless: "No."

Don E. Wilhelm, a licensed clinical social worker, qualified as an expert, testified that B.B.H. had bonded with his foster family, that it was "absolutely in his best interest to remain with this family," and that it would be detrimental to B.B.H. to remove him.

Cassandra Humphrey, B.B.H.'s mother, reaffirmed her desire that her child be placed for adoption and supported the termination of appellant's residual parental rights. She testified that she began living with appellant in November 2004 at his mother's home in a public housing project. There she witnessed fighting between appellant's mother, Sally Wilson, and her boyfriend, with both often intoxicated. Appellant was "smoking crack" most of the time, until he was incarcerated in March 2005. He had broken a "beer bottle over her head" and kicked and punched her as she lay on the ground. On another occasion, with knowledge she was pregnant, he shoved her head against a wall and struck her in the face. These assaults usually occurred

- 3 -

when Humphrey objected to his using her car without her permission. He threatened to kill her and her daughter.[2] She concluded: "I'm in fear for my life when he gets released."

Appellant was transported from Dillwyn Correctional Center for the hearings, from which it was anticipated he would be released on September 27, 2006. He testified: (1) he had been convicted of assault against women four times, though he could only remember the name of one victim; (2) he began using crack in 1998, after he had been shot that year, and used it since then when not incarcerated; (3) as a result of the shooting he has been unemployed since 1998, and receives $384 per month from Social Security disability benefits; (4) after serving six months in jail for an earlier petit larceny conviction in Hanover County, and despite attending substance abuse counseling thereafter, he continued using crack; (5) when he runs out of pain medication, he uses heroin in addition to crack; (6) since 1993 he has been selling crack "on and off" to "any and everybody"; (7) though he has never had a driver's license, he would take Cassandra Humphrey's car and "pawn" it to drug dealers for their use in their sales operations, in exchange for crack; (8) he takes Paxil and other anti-psychotic drugs because he "used to hear voices" and these drugs "prevent [him] from hearing them"; and (9) he planned on living with his mother upon release, though he was unaware he could not live in public housing as a result of the felony conviction for which he was presently incarcerated. Appellant also testified as to his love for and relationship with his eighteen-year-old son, Tyquan. However, Tyquan had never lived with appellant, rather residing with either his natural mother or appellant's mother. Recently, Tyquan moved in with his girlfriend.

Sally Wilson, appellant's mother, testified she would like to care for B.B.H. until her son was released from the penitentiary. At present, Wilson lives in a two-bedroom apartment in

---

[2] Humphrey had an older daughter from a prior relationship.

public housing with her fiancé and great-nephew, the latter supported by public assistance. Wilson never filed a petition for custody of B.B.H.

By letter opinion dated September 29, 2006, the trial court wrote that "[c]ounsel agree the applicable law is stated in <u>Linkous v. Kingery</u>, 213 Va. 393 (1972)[3] and Va. Code § 63.2-1205." The court found as a fact that appellant was "unfit" and concluded "that termination of parental rights is in [B.B.H.'s] best interest and he should be placed for adoption."

ANALYSIS

A.

Appellant's first argument may be succinctly stated: Code § 16.1-277.01(A) requires the agency to "file a foster care plan pursuant to § 16.1-281 to be heard with any petition for approval of an entrustment agreement." Code § 16.1-281(A) likewise requires that "a foster care plan shall be filed in accordance with the provisions of § 16.1-277.01 with a petition for approval of an entrustment agreement." Appellant then proceeds to Code § 16.1-283, which states no petition seeking termination of parental rights "shall be accepted . . . prior to filing of a foster care plan." Building on those portions of the statutes, appellant maintains the circuit court could not consider approval of the entrustment agreement, and placement for adoption with the concomitant termination of his parental rights, unless a foster care plan had been filed *prior to, or contemporaneously with*, the petition seeking that approval, placement, and termination.

Appellant presented this argument to the trial court in a written brief and reiterated the argument at the beginning of the termination hearing. However, after presenting his brief and his short argument, appellant never expressly asked the court to rule on the motion, and the trial

---

[3] This citation is in error. This cite refers to <u>Malpass v. Morgan</u>, 213 Va. 393, 192 S.E.2d 794 (1972), cited in <u>Linkous v. Kingery</u>, 10 Va. App. 45, 390 S.E.2d 188 (1990).

court never made a ruling on whether and/or when the foster care review plan must be filed with the clerk's office. As a result, we find appellant failed to comply with Rule 5A:18.

As this Court has previously held, "Rule 5A:18 serves an important function during the conduct of a trial. It places the parties on notice that they must give the trial court the first opportunity to rule on disputed evidentiary and procedural questions." Gardner v. Commonwealth, 3 Va. App. 418, 423, 350 S.E.2d 229, 232 (1986). Moreover, as the Virginia Supreme Court noted while discussing its contemporaneous objection rule, Rule 5:25, "by failing to bring to the trial court's attention the fact that it had [not ruled on his objection and argument], [appellant] did not afford the trial court the opportunity to rule intelligently on the issue now before us." Riner v. Commonwealth, 268 Va. 296, 324, 601 S.E.2d 555, 571 (2003). Consequently, "the issue is waived on appeal," id., and we cannot address appellant's argument regarding the filing of the foster care review plan.

Moreover, insofar as appellant maintains the introduction into evidence of the August 20 foster care plan, and its consequent consideration by the trial court, was error since that plan lacked a proper procedural foundation, we note that, despite specific inquiry by the trial court, appellant did not object to the introduction of the August 20 foster care plan in evidence. Accordingly, we will not address this argument on appeal. Rule 5A:18; Marlowe v. Commonwealth, 2 Va. App. 619, 621, 347 S.E.2d 167, 168 (1986) ("In order to be considered on appeal, an objection must be timely made and the grounds stated with specificity. To be timely, an objection must be made when the occasion arises -- at the time the evidence is offered or the statement made."); see also Edwards v. Commonwealth, 41 Va. App. 753, 760, 589 S.E.2d 444, 448 (2003) ("Under [Rule 5A:18] . . . a specific argument must be made to the trial court at the appropriate time, or the allegation of error will not be considered on appeal."); Luck v. Commonwealth, 32 Va. App. 827, 834, 531 S.E.2d 41, 44 (2000) ("We conclude the defendant

had the opportunity to object but elected not to do so.  Accordingly, Rule 5A:18 bars consideration of this question."); Jones v. Commonwealth, 32 Va. App. 30, 42, 526 S.E.2d 281, 287 (2000) ("Objection made to the admissibility of evidence is timely only if raised when the questioned statement is made.  See Rule 5A:18.").

B.

Appellant argues the evidence is insufficient for the court to have found that, applying the factors in Code § 63.2-1205, his consent to placement for adoption in accordance with the entrustment agreement was, as required by Code § 63.2-1203, "withheld contrary to the best interests of the child."  The evidentiary standard is set forth in Code § 16.1-277.01(D):

> [I]f the petition seeks approval of a permanent entrustment agreement which provides for the termination of all parental rights and responsibilities with respect to the child, the court shall make a finding, based upon clear and convincing evidence, whether termination of parental rights is in the best interest of the child.

Under familiar principles of appellate review of a termination of parental rights, we presume the trial court "'thoroughly weighed all the evidence, considered the statutory requirements and made its determination based on the child's best interests.'"  Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)).  Further, "we view the evidence and all reasonable inferences in the light most favorable to . . . the party prevailing below."  Cartwright v. Cartwright, 49 Va. App. 25, 27, 635 S.E.2d 691, 692 (2006).  Moreover, "'the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony.'"  Anderson v. Anderson, 29 Va. App. 673, 686, 514 S.E.2d 369, 376 (1999) (quoting Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (*en banc*)).  Finally, a trial court's decision will not be reversed upon appeal "'unless plainly wrong or without evidence to support it.'"  Toms v.

- 7 -

Hanover Dep't of Soc. Servs., 46 Va. App. 257, 266, 616 S.E.2d 765, 769 (2005) (quoting Fields v. Dinwiddie County Dep't of Soc. Servs., 46 Va. App. 1, 7, 614 S.E.2d 656, 659 (2005)).

We first note that on July 1, 2006, after the filing of the original petition in the JDR court, but prior to the hearings and decision in the circuit court, Code § 63.2-1205 was amended by the Virginia General Assembly. See 2006 Va. Acts, cc. 825, 848. As here relevant, that amendment deleted the phrase stating the court "shall consider whether the failure to grant the petition would be detrimental to the child" and inserted in lieu thereof the phrase "the court shall consider whether granting the petition . . . would be in the best interest of the child." Id.

Code § 63.1-225.1 was the predecessor statute to Code § 63.2-1205. We took note in Hickman v. Futty, 25 Va. App. 420, 489 S.E.2d 232 (1997), that "Code § 63.1-225.1, enacted in 1995, codifies the standard promulgated by the Virginia appellate courts in cases decided under prior law, when the statute contained no explicit standard." Id. at 426, 489 S.E.2d at 235 (citing Linkous v. Kingery, 10 Va. App. 45, 390 S.E.2d 188 (1990)).

Thus, in Linkous, we wrote:

> The paramount concern is the welfare of the child, but the child's welfare must be balanced against the rights of the non-consenting natural parent. To reach that balance the court must first determine that the proposed adoption will promote the best interests of the child . . . . Thereafter, the more difficult determination, which involves the permanent severance of the parent-child relationship, focuses on whether consent is being withheld contrary to the best interests of the child. To make that determination . . . the party seeking adoption must produce clear and convincing evidence that a continuance of the parent-child relationship would be detrimental to the child's welfare.

10 Va. App. at 56, 390 S.E.2d at 194.

We need not address the impact of the amendment to Code § 63.2-1205, and any effect it may have upon eliminating "detriment to the child" as a standard in this cause or future causes,

for we find that the evidence supports the decision of the trial court, under the provisions of Code § 63.2-1205 either before or after its amendment on July 1, 2006.

As here relevant, the Code § 63.2-1205 factors determining whether parental consent to adoption is "withheld contrary to the best interests of the child," include the following: "the birth parent(s)' ability to care for the child; the age of the child; the quality of any previous relationship between the birth parent(s) and the child . . . ; the duration and suitability of the child's present custodial environment; and the effect of a change of physical custody on the child." The 2006 amendment added the following enumerated factor: "whether the birth parent(s) are currently willing and able to assume full custody of the child." 2006 Va. Acts, cc. 825, 848.

Applying these statutory considerations to the facts summarized above, we note that B.B.H. was entrusted to foster care three days after his birth and the child is now almost two years old. He has bonded with his prospective adoptive parents, and expert testimony concluded his removal from that home would be detrimental. His mother wishes the adoption to proceed. The relationship between the birth parents showed appellant to have been abusive and physically violent to the mother, to the extent she fears for her life when he is released from incarceration. Appellant has no ability to care for B.B.H. He is a convicted felon, disabled by being shot and subsisting upon $384 per month in Social Security benefits. Testimony reveals no prospects of his employment and he has no home for the child. He cannot lawfully return to live with his mother. He has never been licensed to drive. Appellant is a self-admitted drug addict and drug dealer who "pawned" Cassandra's car to other dealers for use in their actions and in exchange for drugs. Appellant relies upon drugs to alleviate his psychosis. Appellant is a convicted felon with a history of violence towards women. Finally, there has been no "previous relationship" between appellant and B.B.H.

As this Court stated in <u>Frye v. Spotte</u>, 4 Va. App. 530, 536, 359 S.E.2d 315, 319 (1987), "No one can divine with any assurance the future course of human events.  Nevertheless, past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold."  Succinctly stated, the past is prologue.

Appellant's past offers no future for B.B.H. in his custody.

> Where the evidence reveals that adoption would be in the child's best interests and the continued relationship with the non-consenting parent would be detrimental, it follows that the failure to grant the adoption would be detrimental to the child.  In such a case, the conclusion that consent is withheld contrary to the child's best interests is compelled.

<u>Hickman</u>, 25 Va. App. at 432, 489 S.E.2d at 237-38.

<u>Affirmed.</u>