COURT OF APPEALS OF VIRGINIA

Present: Judges Elder, Frank and Petty
Argued at Salem, Virginia

UNPUBLISHED

KYLE PRITCHETT MACIONE

v.      Record No. 2027-12-3

BEATRIZ HUARTE IRUJO MACIONE

MEMORANDUM OPINION[*] BY
JUDGE WILLIAM G. PETTY
JULY 30, 2013

FROM THE CIRCUIT COURT OF WASHINGTON COUNTY
C. Randall Lowe, Judge

Robert M. Galumbeck (Galumbeck, Dennis & Kegley, on brief), for
appellant.

Dennis P. Brumberg (Brumberg, Mackey & Wall, P.L.C., on brief),
for appellee.


Kyle Pritchett Macione (husband) appeals the trial court's final decree, which granted

Beatriz Huarte Irujo Macione (wife) a divorce. On appeal, husband challenges several of the trial

court's findings pertaining to equitable distribution, spousal support, and child support. For the

following reasons, we affirm in part, reverse in part, and remand the matter to the trial court for

further proceedings consistent with this opinion.

I.

Because the parties are fully conversant with the record in this case and this memorandum

opinion carries no precedential value, we recite below only those facts and incidents of the

proceedings as are necessary to the parties' understanding of the disposition of this appeal. "On

appeal, we view the evidence in the light most favorable to wife, the party prevailing below,"

Chretien v. Chretien, 53 Va. App. 200, 202, 670 S.E.2d 45, 46 (2008), and we grant to wife "all

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

reasonable inferences fairly deducible therefrom," Anderson v. Anderson, 29 Va. App. 673, 678, 514 S.E.2d 369, 372 (1999). "A trial court's decision, when based upon an *ore tenus* hearing, is entitled to great weight and will not be disturbed unless plainly wrong or without evidence to support it." Lanzalotti v. Lanzalotti, 41 Va. App. 550, 554, 586 S.E.2d 881, 882 (2003).[1]

## II.

### A. Husband's Donative Intent

In Assignment of Error I(A), husband argues that the trial court erred in finding that husband made "gifts of his separate property" to wife. This argument concerns funds that husband inherited from his grandparents during the parties' marriage. The record establishes that, when husband received those inherited funds, they were deposited into the parties' joint checking account; thereafter, funds from that joint account were applied to investments that were made in both of the parties' names.[2]

"'In reviewing an equitable distribution award on appeal, we have recognized that the trial court's job is a difficult one, and we rely heavily on the discretion of the trial judge in weighing the many considerations and circumstances that are presented in each case.'" Wright v. Wright, 61 Va. App. 432, 449-50, 737 S.E.2d 519, 527 (2013) (quoting Klein v. Klein, 11 Va. App. 155, 161,

---

[1] On brief, wife contends that husband's assignments of error are not accompanied by the required "clear and exact reference to the page(s) of the transcript, written statement, record, or appendix where each assignment of error was preserved in the trial court." Rule 5A:20(c). While we agree with wife that husband's citations to the appendix could be more precise, we do not deem any deficiency in husband's brief in this regard to be "so substantial as to preclude the court's addressing the merits of the case." Moore v. Commonwealth, 276 Va. 747, 753, 668 S.E.2d 150, 154 (2008).

[2] Husband inherited from his grandfather one-half of an $80,000 account (with the other half going to husband's sister), an $88,559 cash distribution, and proceeds from the sale of his grandfather's real property in the amount of $271,436. These funds were deposited into the parties' joint checking account, and the record indicates that certificates of deposit were purchased from the funds in that joint account. In addition, husband inherited from his grandmother a $50,000 certificate of deposit, and husband recalled that those funds were then placed in an investment account.

396 S.E.2d 866, 870 (1990)); see also Srinivasan v. Srinivasan, 10 Va. App. 728, 732, 396 S.E.2d 675, 678 (1990) (explaining that "[f]ashioning an equitable distribution award lies within the sound discretion of the trial judge"). Accordingly, this Court will not reverse an award "[u]nless it appears from the record that the [trial court] has abused [its] discretion," that the trial court "has not considered or misapplied one of the statutory mandates," or "that the evidence fails to support the findings of fact underlying [the] resolution of the conflict." Smoot v. Smoot, 233 Va. 435, 443, 357 S.E.2d 728, 732 (1987).

"One acquires property either as separate or marital." Duva v. Duva, 55 Va. App. 286, 297, 685 S.E.2d 842, 848 (2009). Here, it is undisputed that the funds that husband inherited from his grandparents were acquired as his separate property. See Code § 20-107.3(A)(1)(ii) (stating that separate property includes "all property acquired during the marriage by bequest, devise, descent, survivorship or gift from a source other than the other party"). However, the trial court found that husband's inherited funds had transmuted into wholly marital property. Specifically, the trial court explained in the final decree that it found "by clear and convincing evidence that the parties conducted their marriage as a joint enterprise and used funds from all sources jointly for the benefit of the family, so that [husband] intended to transfer any inherited funds to marital funds and made a gift of such funds to [wife]." We disagree with the trial court's conclusion.

"The burden of proof that the transfer was a gift is upon the party seeking to establish the gift." Utsch v. Utsch, 266 Va. 124, 128, 581 S.E.2d 507, 508 (2003).

> [T]o establish the existence of a gift, wife was required to prove, by clear and convincing evidence, the following three elements: (1) the intention on the part of the donor to make the gift; (2) delivery or transfer of the gift; and (3) acceptance of the gift by the donee. Here, husband argues that wife failed to prove the first element, specifically, his donative intent and the nature and extent of that intent.

Robinson v. Robinson, 46 Va. App. 652, 665, 621 S.E.2d 147, 154 (2005) (internal quotation marks and citation omitted); see Fred C. Walker Agency, Inc. v. Lucas, 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975) (defining "clear and convincing evidence" as "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established" (internal quotation marks and citation omitted)).

Although "intent is a question to be determined by the fact finder," Cirrito v. Cirrito, 44 Va. App. 287, 305, 605 S.E.2d 268, 276 (2004), the trial court was plainly wrong in finding clear and convincing evidence of husband's donative intent. See Code § 8.01-680. At most, the record establishes *wife's* subjective belief that husband intended to convey to her an interest in the inheritances that he received from his grandparents, which she inferred from what she described at trial as the parties' general approach of acting as "a team" and "never ha[ving] separate accounts." According to wife's understanding of the parties' general approach to financial management, "Everything was joint and it was never an issue. This is mine, this is yours, it was ours. And this was how we treated it. It was ours."

However, the record contains no evidence or admissions from husband establishing *husband's* intention to make those inheritances he received from his grandparents "ours." Thus, prior decisions from this Court where there was an indication of such intent by the donor are distinguishable. See Theismann v. Theismann, 22 Va. App. 557, 566, 471 S.E.2d 809, 813 (affirming a finding of donative intent where the husband sent the wife cards indicating that a farm "was 'our home'" and that "money was hers to spend"), aff'd on reh'g en banc, 23 Va. App. 697, 479 S.E.2d 534 (1996); see also Watts v. Watts, 40 Va. App. 685, 702, 581 S.E.2d 224, 233 (2003) (reversing the trial court's finding that the disputed items were the wife's separate property when she testified that using her inheritance money to buy the items "'was something [nice she] wanted to do' for her family" and that she "considered the items to be 'gifts for us'"); Rowe v. Rowe, 24

- 4 -

Va. App. 123, 137, 480 S.E.2d 760, 766 (1997) (affirming a finding of donative intent where "wife testified that husband had said to her that his property was also her property").

Viewing the evidence in the light most favorable to wife as the prevailing party below, the evidence reveals that the parties maintained a joint checking account, that they routinely deposited funds into that joint account, and that they would make investments using the funds in that account. Placing husband's inherited funds in the parties' joint account did not render those funds marital. Furthermore, the use of husband's inherited funds toward the parties' investments may have been one relevant circumstance "in determining if a gift was made, but alone, it is insufficient proof of a gift." Rowe, 24 Va. App. at 137, 480 S.E.2d at 766. Code § 20-107.3(A)(3)(h) expressly provides, "*No presumption of gift shall arise* under this section where (i) separate property is commingled with jointly owned property; (ii) newly acquired property is conveyed into joint ownership; or (iii) existing property is conveyed or retitled into joint ownership." (Emphasis added).

Given the absence of any evidence in the record affirmatively pointing to husband's donative intent with respect to the inheritances he received from his grandparents, the trial court's finding that the parties "conducted their marriage as a joint enterprise" is insufficient to support its conclusion that husband specifically "intended to transfer any inherited funds to marital funds and ma[k]e a gift of such funds" to wife. Accordingly, we reverse the trial court's finding that husband intended to give wife an interest in the funds that he inherited from his grandparents.

## B. Tracing Husband's Inherited Funds

While husband has not disputed that the funds that he inherited from his grandparents were commingled with marital property and used toward jointly titled investments, husband contends in Assignment of Error I(C) that significant portions of those inherited funds are still traceable as his separate property. See von Raab v. von Raab, 26 Va. App. 239, 248, 494 S.E.2d 156, 161 (1997) ("[T]he party claiming a separate interest in transmuted property bears the burden of proving

retraceability."). But the trial court did not address whether husband traced a separate interest in these funds.[3] Accordingly, on remand, the trial court shall determine whether husband can "(1) establish the identity of a portion of hybrid property and (2) directly trace that portion to a separate asset." Rahbaran v. Rahbaran, 26 Va. App. 195, 208, 494 S.E.2d 135, 141 (1997).

## C. Classification of King Pharmaceuticals Stock

In Assignment of Error I(B), husband argues that the trial court erred in finding that the stock husband owned in King Pharmaceuticals, Inc. (King Pharmaceuticals) was not his separate property.[4] Given husband's challenge to the trial court's classification of this property, we must consider the source of husband's initial investment of approximately $10,000 toward that company's stock, which occurred during the marriage. For equitable distribution purposes, separate property includes "all property acquired during the marriage by bequest, devise, descent, survivorship or gift from a source other than the other party," Code § 20-107.3(A)(1)(ii), whereas marital property includes "property acquired by each party during the marriage which is not separate property," Code § 20-107.3(A)(2)(iii).

---

[3] Accordingly, we need not address husband's Assignment of Error I(D), which alleges that the trial court erred when it did not use the "Brandenburg method" for apportioning marital and non-marital components of hybrid property. See Hart v. Hart, 27 Va. App. 46, 66, 497 S.E.2d 496, 506 (1998) (holding that "the Brandenburg formula is an acceptable method of tracing and determining the value of the marital and separate property components of hybrid property under Code § 20-107.3(A)(3)"). On remand, the trial court will be able to determine whether that methodology is applicable and appropriate to use in this case. See id. at 66 n.4, 497 S.E.2d at 506 n.4 ("By approving this formula, we do not intend to imply that this is the only acceptable method of tracing and determining the marital and separate property interests of hybrid property.").

[4] The record establishes that husband made an initial investment in King Pharmaceutical's stock during the marriage, in 1996, when he purchased 3,333 shares for $3 per share. The value of the King Pharmaceuticals stock increased over time through stock splits, and the trial court found that the total value of the stock reached approximately $1,000,000. The stock was sold during the marriage, and its proceeds were used toward the marital home and the parties' investments.

At trial, husband testified that his initial investment in King Pharmaceuticals stock derived from a $10,000 gift from his grandfather. Husband testified that he could not recall precisely when he received the $10,000 gift, but he explained that it must have occurred before he began working for King Pharmaceuticals and that he invested the $10,000 in a certificate of deposit. Husband testified that he then used those funds to purchase stock in King Pharmaceuticals. While husband testified there was documentation corroborating the existence of the $10,000 gift from his grandfather, husband produced no such evidence at trial. Husband testified that he could not find documents corroborating his grandfather's $10,000 gift when he was allowed access to the marital home, and he appeared to suggest that wife, who remained in the marital home during the parties' separation, had disposed of those documents. Wife testified that she gave any pertinent financial documents that she happened to find in the marital home to her attorneys or to husband.[5]

"It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony." Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (en banc). Viewing the evidence in the light most favorable to wife, the prevailing party below, the trial court did not err in finding that husband "failed to prove that stock he purchased from King Pharmaceutical[s] was purchased with funds he received from his grandfather." Furthermore, "[b]ecause the trial court's classification of property is a finding of fact, that classification will not be reversed on appeal unless it is plainly wrong or without evidence to support it." Ranney

---

[5] Husband testified, "[O]ur personal financial records prior to 1998 are not in the house where I can find them where they were when I left the house. I know they were but they're not there now." Later in the proceedings, when the trial court asked wife if she would "just go in the room one day and say this [document] is trash and take and take it out to the trashcan," wife replied, "No, no. I have not done that. Any of that."

v. Ranney, 45 Va. App. 17, 31-32, 608 S.E.2d 485, 492 (2005). Accordingly, we affirm the trial court's finding that the King Pharmaceuticals stock was martial property when it was acquired.

## D. Trial Court's Distribution of Marital Property

In Assignment of Error I(E), husband argues that the trial court committed reversible error when it distributed the marital assets equally to both parties. Husband contends that he should have received a greater percentage of the marital assets than wife because he had already obtained his education prior to the marriage, whereas wife completed her doctoral studies during the marriage, because wife became a permanent resident and then citizen of the United States during the marriage, and because husband was the primary financial contributor during the marriage. Given the deferential standard of review on appeal, we find no abuse of discretion by the trial court.

"In determining the equitable distribution of marital property, '[t]he function of the [circuit court] is to arrive at a fair and equitable monetary award based on the equities and the rights and interests of each party in the marital property." Fadness v. Fadness, 52 Va. App. 833, 841, 667 S.E.2d 857, 861 (2008) (quoting Mitchell v. Mitchell, 4 Va. App. 113, 118, 355 S.E.2d 18, 21 (1987)).

> [A] circuit court has broad discretion in determining equitable distribution. It is not up to us, sitting as an appellate court, to reweigh evidence against the statutory factors. The General Assembly has given circuit courts the discretion to determine the equitable distribution of marital assets in connection with a divorce. Its discretion is limited only in that the circuit court must consider all of the factors in Code § 20-107.3(E). Thus, requesting this Court to simply substitute our judgment of the evidence for that of the trial court is an inappropriate and singularly ineffective appellate argument. If the circuit court considers all the factors and bases its findings on credible evidence, we will not disturb its decision on appeal.

- 8 -

Fadness, 52 Va. App. at 841, 667 S.E.2d at 662; see also Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986) (explaining that the trial court's equitable distribution findings must have "some foundation based on the evidence presented").

Here, the trial court expressly considered all of the Code § 20-107.3(E) factors and weighed all of the evidence and arguments relating to those factors in its sound discretion. The trial court identified husband's predominant financial contributions to the marriage and husband's fault that ended the marriage as the most significant factors. See Code § 20-107.3(E)(2) (directing the trial court to consider "[t]he contributions, monetary and nonmonetary, of each party in the acquisition and care and maintenance of such marital property of the parties"); Code § 20-107.3(E)(6) (directing the trial court to consider "[t]he circumstances and factors which contributed to the dissolution of the marriage, specifically including any ground for divorce"). It then gave these two factors equal weight in its distribution of the marital property. Thus, the trial court in its sound discretion awarded the parties an equal share of the marital property, and we will not disturb its decision on appeal. See Fadness, 52 Va. App. at 841, 667 S.E.2d at 662.

E.  Wife's Alleged Violation of the *Pendente Lite* Order

In his second assignment of error, husband argues that the trial court erred in failing to find that wife owed the marital estate $60,000. Husband claims that wife violated the trial court's March 23, 2010 *pendente lite* order when she did not reimburse $60,000 to the marital estate. That *pendente lite* order stated, in pertinent part, "The Court finds [wife] is holding $60,000.00 in marital funds and it directs those funds be returned *less the funds that have been paid toward marital expenses*." (Emphasis added). However, following the divorce trial, the trial court issued a March 26, 2012 letter opinion, in which it found, in pertinent part, "The Court finds the funds advanced to [wife] and not reimbursed as directed by the Court *were used for*

- 9 -

*family needs*. The balance of those funds will be divided equally between the parties." (Emphasis added).

"It is firmly established that 'trial courts have the authority to interpret their own orders.'" Johnson v. Johnson, 56 Va. App. 511, 518, 694 S.E.2d 797, 801 (2010) (quoting Albert v. Albert, 38 Va. App. 284, 297-98, 563 S.E.2d 389, 396 (2002)). In this case, the trial court found that wife satisfied the terms of the March 23, 2010 *pendente lite* order, and we will defer to that finding on appeal. See Albert, 38 Va. App. at 298, 563 S.E.2d at 396.

F. Imputation of Income to Husband

In Assignment of Error III(A), husband argues that the trial court's award of spousal support to wife must be reversed because it erred when it imputed income to husband. Husband then repeats this argument when addressing Assignment of Error IV, which concerns the trial court's award of child support for the parties' three minor children. The trial court found that husband, who at the time of trial worked as a visiting associate professor of business administration at Emory & Henry College earning $40,000 per year, was voluntarily underemployed. Instead, taking into account husband's education and professional experience, as well as the testimony of wife's vocational expert, John Newman, the trial court imputed an income of $80,000 to husband. We find no abuse of discretion by the trial court.

> In setting or modifying spousal support or child support, a court may impute income to a party voluntarily unemployed or underemployed. See Calvert v. Calvert, 18 Va. App. 781, 784, 447 S.E.2d 875, 876 (1994); Stubblebine v. Stubblebine, 22 Va. App. 703, 710, 473 S.E.2d 72, 75 (1996) (en banc). Whether a person is voluntarily unemployed or underemployed is a factual determination. In evaluating a request to impute income, the trial court must "consider the [parties'] earning capacity, financial resources, education and training, ability to secure such education and training, and other factors relevant to the equities of the parents and the children." Niemiec v. Commonwealth [Dep't of Soc. Servs.], 27 Va. App. 446, 451, 499 S.E.2d 576, 579 (1998).

Blackburn v. Michael, 30 Va. App. 95, 102, 515 S.E.2d 780, 783-84 (1999). "Unless the trial judge misapplies the legal standard or misallocates the burden of proof, the question of whether a person is voluntarily unemployed or underemployed is a factual determination, one firmly placed within the sound discretion of the trial court." Broadhead v. Broadhead, 51 Va. App. 170, 180-81, 655 S.E.2d 748, 753 (2008) (internal quotation marks, alterations, and citations omitted).

The record establishes that husband holds a Master's degree in accountancy from the University of Alabama and a law degree from Washington & Lee University. Prior to entering law school, husband obtained his license as a certified public accountant (CPA) in 1987. Husband is a licensed CPA in Mississippi and, according to his résumé, he worked in that capacity for the state's largest CPA firm. After obtaining his law degree and becoming licensed to practice law in Virginia and Tennessee, husband joined a law firm in Bristol, Virginia. In 1996, husband left that law firm to become corporate counsel for King Pharmaceuticals in Bristol, Tennessee. Husband remained at King Pharmaceuticals until 2004, by which time he had risen to the position of the company's president.[6]

Wife became a Spanish professor at Emory & Henry in 2005, and husband began to pursue teaching opportunities at that college shortly thereafter. Husband was an adjunct professor of business administration at Emory & Henry from 2007-08, and he attained his

---

[6] Husband testified that he was initially offered employment with King Pharmaceuticals through a personal connection. He also testified that King Pharmaceuticals was growing rapidly at that time, that he reported personally to the company's then-president, Jeff Gregory (who subsequently became chief executive officer), and that he was involved with furthering the company's mergers and acquisitions strategy and with transitioning the company to a publicly-traded status. Husband became the senior director of contract administration in 1997, and he served as the executive vice president of corporate affairs from 1998 until 2002, when he was then elevated to president of King Pharmaceuticals. Husband resigned from King Pharmaceuticals in 2004, in part because Gregory was leaving the company and its board of directors appeared likely to search outside of King Pharmaceuticals' corporate structure for Gregory's replacement. Husband testified that he received a severance that amounted to approximately $1,500,000, before taxes, and it is undisputed that the parties agreed that husband would remain at home and manage their investments after he left King Pharmaceuticals.

current position of visiting associate professor in 2008. Husband testified that he enjoys teaching, that he is regarded as an effective instructor of business administration at Emory & Henry, and that he wants to continue teaching there.

Newman, whom wife offered as an expert in the field of vocational assessments, testified that he had appeared as an expert witness at divorce trials "numerous times" and stated that husband "has such a unique background" because he has been a CPA, a lawyer, and the president of a Fortune 500 company. Newman recognized that "a gentleman of [husband's] education and work history is somewhat limited in this geographic area in terms of his ability to earn an income in proportion to his education, training and work history." However, after performing a transferrable skills analysis and reviewing the local labor market over a two-month period of 2011, Newman identified several positions for which he believed husband was qualified, "notably, three jobs as financial managers or comptrollers," "one job as a director of legal services and general counsel," and "several other lower level accounting" positions. Newman opined that husband could "reasonably expect" to earn between $70,000 and $130,000 per year, "possibly $140,000," and that "I think the midpoint of that range, about $100,000 a year, is probably the best measure of his earning capacity."

Weighing the evidence in its March 26, 2012 letter opinion, the trial court found that husband's employment with King Pharmaceuticals "stemmed primarily from his connection with the family operating [that business] and would be difficult to emulate." However, given the evidence relating to husband's law degree, CPA certification, and prior work experience, the trial court found that husband "has made the choice to be underemployed in his teaching position" at Emory & Henry earning $40,000 per year. Taking a more conservative view of husband's earning capacity than Newman's "midpoint" estimation of $100,000 per year, the trial court imputed an income of $80,000 to husband.

On appeal, husband argues that Newman's opinion should have been given little to no weight because husband claims that Newman made some incorrect assumptions about his professional background and experience. However, husband raised the same assertions below, and the trial court found that Newman's overall opinion concerning husband's earning capacity was credible and entitled to weight, as the trial court was entitled to do. See Street, 25 Va. App. at 387, 488 S.E.2d at 668.

Husband also asserts that wife failed to show "that more lucrative work was *currently* available" to husband. Niemiec, 27 Va. App. at 451, 499 S.E.2d at 579 (emphasis added). Viewing the evidence in the light most favorable to wife, we disagree with husband's assertion. On direct examination, Newman testified that he conducted a two-month review of the Bristol labor market and "identif[ied] some jobs" that he had "found" that he believed fit husband's education, skills, and background. In addition, Newman responded affirmatively when wife's counsel asked "whether or not there are in this market, if one is looking, jobs available for [husband] at a wage rate that's higher" than husband earned at Emory & Henry. On cross-examination, Newman acknowledged that, while he believed that husband could be qualified for some additional positions that he referenced, he was unaware if those positions were available. Given this comment, husband's counsel asked Newman, "So as far as *current circumstances* are concerned you don't know if anything is available making more than what he makes?" (Emphasis added). Newman then clearly replied, "None *beyond what I testified to*, no sir." (Emphasis added). Based on this testimony, there was evidence in the record to support the trial court's finding that more lucrative work was currently available to husband.

Furthermore, wife is entitled to any reasonable inferences flowing from the evidence. See Anderson, 29 Va. App. at 678, 514 S.E.2d at 372. In this case, the trial court was aware that finding employment can sometimes be difficult. Newman testified that "[y]ou have to spend a

- 13 -

lot of time looking for a job," that "[y]ou have to do a lot more than just look at the help wanted ads," that "[y]ou have to network," that "[y]ou have to market your skills," and that the process "requires a lot of time and energy." However, Newman also testified that husband presented "one of the most outstanding [resumes] I've ever read, period." The trial court was entitled to infer not only from Newman's testimony, but also from husband's testimony that he wished to continue teaching at Emory & Henry, that husband was voluntarily unemployed.

When a trial court imputes income to a party, "[t]he evidence must be sufficient to 'enable the trial judge reasonably to project what amount could be anticipated.'" Niemiec, 27 Va. App. at 451, 499 S.E.2d at 579 (quoting Hur v. Virginia Dept. of Soc. Servs. Div. of Child Support Enforcement ex rel. Klopp, 13 Va. App. 54, 61, 409 S.E.2d 454, 459 (1991)). Here, the trial court accepted Newman's opinion that husband could find more lucrative employment, but the trial court also deviated from Newman's expectation that husband could earn $100,000 per year. The trial court instead imputed to husband an income of $80,000, as a reasonable projection of husband's anticipated salary. We affirm the trial court's finding because it was supported by credible evidence.

### G. Decision to Award Wife Spousal Support

In Assignment of Error III(F), husband argues that the trial court "erred by awarding [wife] spousal support at all and, once it did award spousal support, not limiting it to a term of years." However, husband's brief fails to cite even a single piece of law or authority in support of this argument.[7]

---

[7] On brief, husband merely asserts that the issues raised in these assignments of error are mixed questions of law and fact, which is incorrect. See Bruemmer v. Bruemmer, 46 Va. App. 205, 210, 616 S.E.2d 740, 742 (2005) ("[O]ur review [of a spousal support award] is limited to determining whether the trial court clearly abused its discretion.").

"Rule 5A:20(e) requires that an appellant's opening brief contain '[t]he principles of law, the argument, and *the authorities* relating to each question presented.' Unsupported assertions of error 'do not merit appellate consideration.'" Fadness, 52 Va. App. at 850, 667 S.E.2d at 865 (emphasis added) (quoting Jones v. Commonwealth, 51 Va. App. 730, 734, 660 S.E.2d 343, 345 (2008)). Accordingly, if a party fails to strictly adhere to the requirements of Rule 5A:20(e), and that failure is significant, then this Court may treat the assignment of error as waived. Id. There is a plethora of legal authority on spousal support awards that husband could have used to support his argument that wife should not have been awarded spousal support or that the award should have been for a defined duration. But husband failed to provide any guiding legal authority. Because husband's failure under Rule 5A:20(e) is significant, he has waived his right to have this argument reviewed by this Court.

III.

For the reasons stated above, the trial court committed reversible error when it found that husband intended to transfer his inheritances from his grandparents to the marital estate as gifts to wife. Because those inherited funds were commingled with marital funds and used toward the parties' investments, we remand the matter to the trial court for it to determine whether husband can trace any separate property that derived from his inheritances from his grandparents. On remand, the trial court shall also reconsider the spousal support and child support awards to the extent they are affected by the trial court's findings on remand pertaining to equitable distribution.[8] See Robinette v. Robinette, 4 Va. App. 123, 131, 354 S.E.2d 808, 812 (1987).

Affirmed in part,
reversed in part,
and remanded.

---

[8] For this reason, we decline to consider husband's Assignments of Error III(B), (C), (D), and (E), which pertain to the amount of spousal support that the trial court awarded to wife.

- 15 -